GRAY, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*April 30—May 31, 1913.*

*Railroads: Injury to employee in yards: Negligence of engineer: Violation of orders: Scope of employment: Contributory negligence: Questions for jury: Federal Employers' Liability Act: Injury to employee when not employed in interstate commerce: Evidence: Judicial notice: Offer of proof: Appeal: Error not presumed: Damages: Tuberculosis induced by injuries: Medical testimony.*

1. Plaintiff, who was employed in defendant's yards as engine "dispatcher" or "hostler," was walking in a beaten path at the side of the track northward from a cinder pit into which another employee was throwing water from a hose, causing a cloud of steam to rise and spread over the track in the direction plaintiff was going.  Wishing to cross the track, he stopped and listened and, hearing no sound but a hissing noise which he thought was produced by the throwing of water on the hot cinders, stepped on the track without looking toward the south and was struck by a "drifting" engine coming from that direction.  *Held* that, in view of the facts that there was a yard regulation requiring the stopping of all engines south of the cinder pit, which the engineer failed to observe, and that the duties of yardmen necessarily take them frequently upon and about the tracks, it cannot be said as a matter of law that plaintiff, was guilty of contributory negligence, although upon the same evidence the jury would have been warranted in finding that to be the fact.

2. Under the circumstances stated, plaintiff's testimony that he listened but could not hear the natural and necessary noises of the engine as it approached, was not incredible.

3. Although the engineer of the engine which struck plaintiff violated the orders of his employer in running past the cinder pit instead of delivering his engine to the engine dispatcher south of the pit, he was nevertheless within the scope of his employment so far as third persons were concerned.

4. That the great railroad systems of the state are continuously engaged in both interstate and intrastate commerce is matter of common knowledge.

5. To bring a case within the federal Employers' Liability Act it is necessary not only that the employer be engaged in interstate commerce but that the injured employee shall suffer his injury while he is employed therein.

6. An employee whose duty it is to care for and dispatch engines used in both interstate and intrastate commerce cannot be said to be employed in interstate commerce during the entire day; especially not during the periods of leisure or rest, while merely waiting for the arrival of an engine.

7. To warrant a reversal for the exclusion of evidence offered for the purpose of showing the case to be within the federal act, where plaintiff's injury occurred during a period of leisure or rest, the offer should be so definite and certain as to apprise the trial court of the fact that the proof so offered would tend to establish that plaintiff's entire work was connected with interstate commerce.

8. Medical testimony, in a personal injury case, to the effect that an injury such as plaintiff received is likely to induce or incite tuberculosis by reducing the natural resistance of the patient, does not suffice to establish a causal relation between the physical injury and tuberculosis shown to have existed more than a year later.

9. But when to this testimony is added the positive opinion of plaintiff's family physician, who was in a position to judge of the actual as well as probable effects of the injury upon plaintiff, to the effect that the tubercular condition is the result of the injury, it cannot be said that a finding of the existence of such causal relation is purely conjectural.

APPEAL from a judgment of the municipal court of Outagamie county: THOMAS H. RYAN, Judge. *Affirmed.*

Personal injuries. Plaintiff, a man fifty-one years of

age, was for years an employee of the defendant, and in January, 1911, was an "engine dispatcher" or "hostler" in the defendant's yards at Antigo, Wisconsin. His duties were to take charge of every engine coming into the yards at the close of its run, empty the fire box by dumping the coal and cinders into the cinder pit, run it to the coal house to be replenished with coal, to the water tank to be replenished with water, thence to the wood bin to be supplied with kindling to start a fire, and thence to the roundhouse to wait for its next trip. He had an an assistant named Rock and a helper named Kraioski. The latter was called the pitman, and it was his duty to clean out the pan of the engine, wet down the coals and cinders, and shovel the cinders out of the pit. The tracks in the yards run practically north and south, the roundhouse being at the north end and the engines coming in at the south end. As the engine comes in to the yard it first reaches the cinder pit, a long, rectangular pit, several feet deep, which is about eighty feet in length, somewhat wider than the track and immediately under the same. Six feet nine inches north of this pit and on the west side of the track is a coal shed, which parallels the track for about 250 feet northward, and is four feet three inches distant from the west rail thereof, leaving a clearance space of about eighteen inches. On the east side of the track, about twelve feet distant from the east rail and about sixty feet north of the cinder pit, is a small shelter shanty, nine by fifteen feet in size, in which the plaintiff and his helpers stayed when not required by their duties to be actively at work. The sandhouse, water tank, and wood bin were still further north on the east side of the track, and the roundhouse was 200 feet further north than the wood bin. About thirty engines were dispatched during the twenty-four hours, of which the plaintiff and his assistant dispatched about half. Their working hours were from 6 o'clock a. m. until 6 o'clock p. m.

The accident in question happened between 10 and 11 o'clock in the forenoon of January 19, 1911. The plaintiff testified that on that morning he and his helper had dispatched four engines prior to 8:20 o'clock, at which time he went to the depot to get his pay check. He then went to a grocery store and also to a saloon near by, and returned to the round-house after an absence of about fifty minutes. He remained at or in the vicinity of the roundhouse about three quarters of an hour and then walked southward on the east side of the track past the sandhouse and the shanty to a point about twenty-three feet south of the shanty, where he crossed to the west side of the track and walked along south along the east side of the coal shed, between it and the west rail of the track, to the southeast corner of the coal shed, and continued south to a point three or four feet south of the north line of the cinder pit, where he stopped. He testifies that he came to this point because when he left the roundhouse he saw so much steam and smoke arising from the cinder pit that he concluded that he ought to ascertain whether the cinder-pit man, Kraioski, was performing his duty in putting out the fire in the cinder pit. He further testifies that when he reached the last point above stated he saw Kraioski standing at the west edge of the cinder pit with the hose in his hands, throwing water on the hot cinders in the pit, and that when he saw this he started back to the shanty along a beaten path between the coal shed and the west rail; that smoke and steam were coming from the cinder pit in volumes and were blown northward so as to obscure the vision; that as he reached a point about opposite the shanty, as he thought, he turned eastward, stopped and listened a few seconds, but heard nothing, as he thought, except the sizzling of the water on the cinders and hot coals in the cinder pit, and then started to step over the west rail of the track, and was struck by engine No. 1066 and badly injured. He claimed that the engine was drifting or approaching noiselessly without working steam and without ringing

the bell.   The fact that he was struck by the engine is admitted.   The negligence claimed was (1) the failure to stop the engine south of the cinder pit, in violation of a regulation or order claimed to exist to that effect; (2) the failure to ring the engine bell; and (3) the running of the engine at a negligent rate of speed under the circumstances.

The jury returned the following special verdict:

"(1) Was the plaintiff, on the 19th day of January, 1911, struck by one of defendant's engines and injured?   A. Yes (by the court).

"(2) Did the defendant, prior to the day of the plaintiff's injury, cause an order to be issued providing in substance that engines delivered on coal-shed track to be dispatched, should stop south of the cinder pit?   A. Yes.

"(3) If you answer question numbered 2 'Yes,' was such order abrogated prior to the day of the plaintiff's injury? A. No.

"(4) If you answer question numbered 2 'Yes' and question numbered 3 'No,' then was Engineer Kane guilty of negligence in running his engine north of the cinder pit in violation of such order at the time plaintiff was injured?   A. Yes.

"(5) If you answer question numbered 4 'Yes,' then was such negligence of Engineer Kane a proximate cause of plaintiff's injury?   A. Yes.

"(6) Was the engine bell of the engine that struck plaintiff ringing at and immediately prior to the time of plaintiff's injury?   A. No.

"(7) If you answer question numbered 6 'No,' then was Engineer Kane guilty of negligence in failing to cause the engine bell to be rung immediately prior to the time of plaintiff's injury?   A. Yes.

"(8) If you answer question numbered 7 'Yes,' then was such negligence a proximate cause of plaintiff's injury? A. Yes.

"(9) Under the circumstances existing, was Engineer Kane guilty of negligence in running the said engine north of said cinder pit to the place where it struck plaintiff at the rate of speed at which he was running?   A. Yes.

"(10) If you should answer question numbered 9 'Yes,'

then answer this: Was such negligence a proximate cause of plaintiff's injury? *A.* Yes.

"(11) Was the plaintiff guilty of any negligence which proximately contributed to his injury? *A.* No.

"(12) If you should answer the eleventh question 'Yes,' then answer this: Was the said negligence of Kane greater than that of the plaintiff? *A.* (No answer.)

"(13) If you should answer the twelfth question 'Yes,' then did such negligence contribute in a greater degree to the plaintiff's injury than did that of the plaintiff? *A.* (No answer.)

"(14) What sum will justly compensate the plaintiff for the injuries sustained by him? *A.* $7,815 (seven thousand eight hundred and fifteen dollars)."

The usual motions were made by the defendant for judgment notwithstanding the verdict, for correction of the verdict and judgment thereon as corrected, and, in event of the denial of these motions, for a new trial. All of the motions being overruled, judgment was rendered for the plaintiff on the verdict, and the defendant appeals.

For the appellant there was a brief by *Edward M. Smart,* and oral argument by *C. H. Gorman.* He contended in part: (1) The plaintiff was guilty of contributory negligence as a matter of law (*Osborne v. Lehigh Valley C. Co.* 97 Wis. 27, 71 N. W. 814); and the question as to whose negligence was the greater should have been submitted to the jury (*Schendel v. C. & N. W. R. Co.* 147 Wis. 441, 133 N. W. 830). (2) The acts of the engineer were not in the discharge of his duties and the defendant is not liable therefor. Laws of 1907, ch. 254; *Cobb v. Simon,* 119 Wis. 597, 97 N. W. 276; *Steffen v. McNaughton,* 142 Wis. 49, 124 N. W. 1016; *Firemen's Fund Ins. Co. v. Schreiber,* 150 Wis. 42, 135 N. W. 507. (3) The plaintiff was employed in interstate commerce and the federal act governs the case. *Second Employers' Liability Cases,* 223 U. S. 1, 32 Sup. Ct. 169; *Ruck v. C., M. & St. P. R. Co., ante,* p. 158, 140 N. W.

1074; *Lamphere v. Oregon R. & N. Co.* 196 Fed. 336; *Zikos v. Oregon R. & N. Co.* 179 Fed. 893; *Colasurdo v. Central R. Co. of N. J.* 180 Fed. 832, 192 Fed. 901; *Behrens v. Ill. Cent. R. Co.* 192 Fed. 581; *Mikkelson v. Truesdale,* 63 Minn. 137, 65 N. W. 260.    (4) The evidence as to tuberculosis was too remote.- *Bucher v. Wis. Cent. R. Co.* 139 Wis. 597, 120 N. W. 518; *Krawiecki v. Kieckhefer B. Co.* 151 Wis. 176, 138 N. W. 710; *Depow v. C. & N. W. R. Co.* 151 Wis. 109, 138 N. W. 42; *Weber v. Third Ave. R. Co.* 12 App. Div. 512, 42 N. Y. Supp. 789; *Hoey v. Metropolitan St. R. Co.* 65 App. Div. 270, 74 N. Y. Supp. 1113; *Scheffer v. Railroad Co.* 105 U. S. 249; *Marcott v. M., St. P. & S. S. M. R. Co.* 147 Wis. 216, 133 N. W. 37; *Spear v. Hiles,* 67 Wis. 361, 30 N. W. 511; *Watters v. Waterloo,* 126 Iowa, 199, 101 N. W. 871; *Snow v. N. Y., N. H. & H. R. Co.* 185 Mass. 321, 70 N. E. 205; *Koch v. Zimmerman,* 85 App. Div. 370, 83 N. Y. Supp. 339.

*Stephen J. McMahon,* attorney, and *P. H. Martin,* of counsel, for the respondent.

WINSLOW, C. J.    The appellant makes five contentions, viz.: (1) that the plaintiff was guilty of contributory negligence as matter of law; (2) that the engineer of the engine was not acting within the scope of his employment when the accident happened; (3) that the court erred in refusing to receive evidence tending to show that plaintiff was employed in interstate commerce at the time of his injury; (4) that the court erred in admitting in evidence proof as to pulmonary tuberculosis, and in failing to instruct the jury that there was no evidence that the accident caused his tubercular condition; and (5) that the damages are excessive.    These contentions will be discussed in their order.

1. The first contention is based principally upon the plaintiff's own admissions to the effect that he did not look to the

south to see whether an engine was coming before he started to walk northward, that he knew it was dangerous to walk northward from the pit, either on the track or close to the track, because it was a common occurrence for an engine to move along over this space without giving the proper signals, and that notwithstanding this fact and the fact that he could not see to the southward he started to cross the track. In addition to these admissions the defendant insists that the plaintiff's claim that he listened and could not hear the natural and necessary noises of the engine as it approached is incredible.

These considerations were certainly amply sufficient to justify the jury in holding the plaintiff guilty of contributory negligence, but the question whether they would justify the court in so holding is a very different one. The plaintiff's testimony went further, however. He testified (and in this he is fully corroborated by other testimony) that a yard regulation existed requiring incoming engineers to stop their engines and leave them for the "engine dispatchers" to take charge of before reaching the cinder pit; that as he walked northward he walked west of the track in a beaten path and not on the track itself; that he stopped before attempting to cross the track and while he was still in a place of safety (namely, the clearance space between the track and the coal shed), and listened for somewhere from two to four or five seconds; that he heard no engine nor engine bell; that the only sound he could hear was a hissing noise which he thought was the noise produced by the throwing of water on the hot cinders in the pit, that he concluded that everything was clear, and then started to step across the track.

We are unable to say that this testimony is incredible. We suppose it is matter of common knowledge that a "drifting" engine frequently makes little noise. It may well be that under circumstances such as were testified to here, the noise of the relief valve of such an engine might be so

merged into the hissing of the water being thrown upon the cinders as to be indistinguishable. Taking into consideration the fact that there was a yard regulation requiring the stopping of all engines south of the pit and the further fact that yard men must necessarily be frequently upon and about the tracks in the performance of their duties, we are unable to say that the plaintiff's conduct here was negligent as matter of law.

2. The engineer of the locomotive testified that he knew of the bulletin requiring engines to stop south of the pit to be delivered to the "engine dispatcher," but that he took his engine north to save himself walking; that he had to go to the roundhouse to leave his clothes, and that he always took his engine north as far as the water tank if there were no engines there, and the "engine dispatcher" received it at that place. From these facts it is argued that the engineer was not only disobeying orders, but was not within the scope of his employment, hence that his master is not responsible for his negligent act. The contention is clearly untenable. The engineer's duty was to deliver his engine to the "engine dispatcher." He was directed to do that at a certain place, but he chose to do it at another place. In so doing he violated orders, but was still within the scope of his employment. This subject has been gone over so recently that it is unnecessary to enlarge on it again. The principle is that if a servant is endeavoring to forward his master's business, but is guilty of negligence or even violation of orders in his endeavor, he will violate his duty to his master, but he will still be within the scope of his employment so far as third persons are concerned. Were it otherwise there would apparently be no redress against the master for injuries received by third persons at the hands of negligent or disobedient servants. *Ratcliffe v. C., M. & St. P. R. Co., ante,* p. 281, 141 N. W. 229.

3. The complaint does not allege that the defendant was

engaged in interstate commerce, or that the engine in question had been handling an interstate train, but simply that the defendant was operating trains and was carrying passengers and freight for hire between Antigo and other cities and villages in Wisconsin.   Neither did the plaintiff's evidence show that the defendant was transacting an interstate business.   When the defendant took the case, however, it offered to show that it and its trains, engines, and employees were engaged in hauling cars of freight continuously over this line between points in Illinois, Michigan, and Wisconsin at and prior to the time of the accident; that the engines which were being dispatched at this roundhouse at the time in question were making trips through Michigan to Ashland, making connections with the Watersmeet branch; that the engines running south wouldn't run outside the state; that those going and coming from the south handled refrigerator cars from Chicago.   No offer was made to show that the engine in question had been hauling an interstate train or interstate freight, nor that all the engines dispatched at this roundhouse hauled interstate freight or interstate trains.   Part of this testimony was received against objection, but ultimately it was all stricken out, and so the question whether the federal Employers' Liability Act controlled the present case was eliminated from the case.

An attempt is made by the respondent to justify this ruling on the ground that the testimony was incompetent and immaterial, because there is no claim made in the answer that the plaintiff was employed in interstate commerce at the time of his injury.   We should be slow to hold to so strict and technical a rule.   The statutes of the United States are the law of the land, and not like the statutes of our sister states which must be pleaded and proven in order to be available.   Furthermore, the fact that the great railroad systems of the state are continuously engaged in both kinds of com-

merce must, we think, be so well known as to be matter of common knowledge. We do not find it necessary to decide this question, however, as we are of opinion that the ruling was right on the merits. As it was pointed out in the recent case of *Ruck v. C., M. & St. P. R. Co., ante,* p. 158, 140 N. W. 1074, it is necessary, in order to bring a case within the federal act, not only that the employer be engaged in interstate commerce, but that the injured employee shall suffer his injury "while he is employed" in interstate commerce. Taking care of an engine after it has completed its run and preparing it for the roundhouse seems very like repairing it, and we have just held that a servant is not employed in interstate commerce who is simply repairing an appliance which may be used for either kind of commerce, but which is not at the time of the repair in actual use in facilitating interstate commerce. *Ruck v. C., M. & St. P. R. Co., supra.*

We think there is a stronger ground, however, upon which the ruling of the trial court may be sustained. It appears that the plaintiff at the time of the accident here was walking back to his rest shanty, and was doing nothing at all in the way of dispatching engines. Now it may perhaps be correctly held (though we do not decide the question) that a man whose day is spent in dispatching engines all of which are engaged in interstate commerce is in legal effect employed in interstate commerce during the whole day and including the periods of leisure or rest when he is doing nothing but waiting for the arrival of an engine; but if, on the other hand, part of the engines dispatched be engaged in interstate business and part in local or intrastate business, we are unable to see how it could be logically said that he was "employed in interstate commerce" all day or during his intervals of leisure. In the present case, as we have seen, there was no offer to show that all the engines dispatched daily by

the plaintiff were engaged in interstate commerce. As said before in this opinion, we think it must be considered a matter of common knowledge that the great railroad systems of the present day are engaged in both interstate and intrastate commerce all the time and side by side. The offer of proof in this case went little, if any, further than this. It was noticeably guarded and indefinite in its purport. Every word of it might be admitted to be true and yet it would not be shown that all the engines dispatched at this roundhouse by the plaintiff were engaged in interstate business, nor even that the engine in question had been so engaged. The offer should have been so definite and certain as to apprise the trial court of the fact that the proof so offered would tend to establish the fact that the plaintiff's entire work consisted of the dispatching of engines engaged in interstate commerce. Error must appear affirmatively,—it is not to be presumed. We conclude, therefore, that there was no error in these rulings.

4. It appears from the evidence that the plaintiff received severe bruises, wounds, and contusions on the head, body, and hips at the time of the accident; that several ribs were broken, and that he was in bed two weeks; that his left arm is still partially paralyzed; that he suffers pain in the left arm and shoulder practically all the time; that he is incapacitated for physical labor; is afflicted with occasional spells of dizziness; and that his average weight is reduced from about 160 pounds to about 130 pounds. The injury was suffered in January, 1911. He was examined by Dr. Connell of Fond du Lac in May, 1912, and it was then found for the first time by examination of his sputum that he had incipient consumption or tuberculosis of the lungs. He testified himself that he had had night sweats and hemorrhages. This testimony was received against objection, and the court refused to instruct the jury, as requested by the defendant, that they could not find that the accident caused the pulmonary tuberculosis

from which the plaintiff is suffering. The defendant's contention is that there is no sufficient evidence to establish any causal relation between the physical injury and the tuberculosis which existed more than a year later, and that the relationship between the two is purely conjectural. There was medical testimony to the effect that an injury such as plaintiff received is likely to induce or incite tuberculosis by reducing the natural resistance of the patient, lowering his vitality, and putting him in a condition whereby he is unable to withstand infection. If this testimony were the only testimony tending to show a causal relation between the injury and the tuberculosis we should agree with the defendant's contention. If decreased powers of resistance resulting from an injury are to be considered as a link in the chain of causation between the injury and a disease developing years afterward, it is very evident that a large, if not an almost limitless, field is opened up for speculation by juries in a region where there can be no guide and no probability of just results.

In the present case, however, there was other testimony besides the general testimony above referred to. Dr. E. J. Donohue, who treated the plaintiff for his injuries from the day of the accident in January, 1911, until some time in April following and gave him a thorough physical examination, including an examination of the sputum, about two weeks before the trial in July, 1912, testified directly as follows:

"Such an injury as the one he sustained would cause tuberculosis. It would decrease the resisting forces, tend to give a chance for infection, and give it a chance to loom up. In other words, this germ that is dormant or inactive would or can become active. In my opinion the tubercular condition that I found is the result of this injury, and he is permanently disabled from manual labor."

Here is direct testimony by the physician who treated the plaintiff for his injuries for months, and presumably knew

more of their nature and extent than any one else.   It appears that he had known the plaintiff for years and had treated his family.   He must have been in a favorable position to judge of the actual as well as the probable effects of such an injury upon the plaintiff.   He testified positively that in his opinion the tubercular condition was the result of the injury received.   We are unable to say that this testimony is beyond the proper scope of expert medical testimony, and unless we can say that it seems certain that we cannot hold that a finding that the tubercular condition was caused by the accident is purely conjectural.

There are no other contentions which require treatment.

*By the Court.*—Judgment affirmed.