[No. 13292.    Department One.    July 28, 1916.]

D. ANTON, *Appellant*, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, *Respondent*.[1]

DAMAGES—PERSONAL INJURIES—PROXIMATE CAUSE—RESULTING DIS-EASE—EVIDENCE—OPINION EVIDENCE — SUFFICIENCY. A recovery for tuberculosis of the shoulder joint, developed in seven months as the result of a trifling fall by a section hand while engaged in removing ties, depends upon speculation and conjecture, and cannot be sus-tained upon a physician's answer to a hypothetical question to the effect that such an injury is likely to induce or incite tuberculosis by reducing the natural resistance of the patient at the point of the bruise, from which the witness gave it as his opinion that the injury was the determining cause, where it was the established fact that tuberculosis was the unusual rather than the usual thing and very unusual in the shoulder joint, since the injury was not the natural and probable consequence of the fall; especially where a specialist testified that it would take fourteen to twenty-four months to develop the condition in which defendant was found seven months after the injury.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered February 16, 1915, dismissing an action for personal injuries sustained by a section hand, upon granting a nonsuit. Affirmed.

*Walter B. Allen* and *C. Liliopoulos*, for appellant.

*Geo. W. Korte*, for respondent.

CHADWICK, J.—This action was brought to recover dam-ages for personal injuries. Appeal is taken from a judg-ment of nonsuit rendered in the trial court.

[1]Reported in 159 Pac. 115.

Appellant was employed as a section hand by respondent and commenced work about September 1, 1913. Several days afterward, he and a fellow workman were replacing ties. Dirt and gravel around the old tie would be loosened; then one of the men would pull by means of a pick sunk in the tie, and the other would push with a shovel. Appellant alleges that the pick furnished by the company was dull; that he could not secure a firm hold on the ties; that the pick slipped and, as a result, he fell twice on the day in question. He fell in the morning, striking on his hand. To use the words of appellant:

"And I dropped on my hand this way (illustrating); side hurt a little; my hand on this side hurt a little. . . . I slip, that pick drop down and hurt my hand."

In the afternoon he fell again.

"That pick slip again and I drop down on my hand, drop down. Q. What part of your body hit the ground? A. I drop down, was pulling this side of that pick; slip the pick and I drop down, and this hurt (indicating). Q. The left shoulder? A. Yes, drop down on the gravel, or gravel and big rock."

After appellant fell the first time, he says he called the attention of the foreman to the condition of the pick and the foreman promised to secure another pick for him.

Appellant continued in the employ of respondent under full pay without interruption for seven months after the accident. His shoulder was sore for one or two days, and it bothered him again somewhat in about two months. One day, while felling a tree with an axe, a sharp pain hit him in the shoulder. His arm fell limp to his side. He was unable to continue his work and was sent to the hospital. After a few days given to observation by the attending surgeons, appellant was told that he would never have the use of his arm again. His case was diagnosed as tuberculosis of the shoulder joint. He was put in a cast which caused a fixation

of the joint (the only treatment possible in such cases), and after six or seven months was discharged by the surgeon.

It is appellant's theory that the tubercular joint was caused by the fall, and that respondent is liable in damages. Much of the briefs are given up to a discussion of the assumption of risk, the promise to repair, and the "simple tool doctrine," but we think it will need no discussion of these principles to sustain the judgment of the lower court. The testimony is insufficient to hold defendant to a liability for the present condition of appellant.

The case of appellant rests entirely upon an answer to a hypothetical question propounded to a medical witness:

"Q. From the history that I have given you here, where he fell to the ground and struck himself, and at first felt very little pain at that time, which afterwards gradually decreased until finally he did not pay very much attention to it, only periodically he felt some pains, and after over-straining his arm gave him to understand there was something radically wrong with it, and it was afterwards diagnosed by the doctor as acute tuberculosis, would you say any other cause outside of the first injury which he received when he fell to the ground has brought about the condition from which he is now suffering?

"A. Well, it is very natural to attribute it to an injury of that kind where we have a definite injury coming on in a person who has been perfectly healthy and well up to the very day of their injury, and from that time on sickness is manifested and that continues. In such a condition as we find the shoulder joint in, and this sort of a disease coming on in a person who has been perfectly well prior to that time, it is the most natural thing in the world to assume that the injury was the determining cause. The bruise in the shoulder made it possible for the infection to start in that bruised portion and then continue; where, if the tissues had been perfectly normal, as they were in the other shoulder, it would not have started there. Usually requires some such bruised condition of the tissues for the germ to find a lowered resistance in that particular spot, and then it starts to grow there and produces the tuberculosis of the bones and joints."

The witness was a general practitioner who assumed no special skill in the science of orthopedy, and who had not, theretofore, had the case under his personal supervision. The case was taken from the jury after all the evidence was in. Taking the opinion of the witness for the appellant, as quoted above, at its full worth, we think it is no more than a statement of a possibility or possibly a probability, more or less remote, that the tuberculosis is a result of the injury. This is not enough. The law demands that verdicts rest upon testimony and not upon conjecture and speculation. There must be some proofs connecting the consequence with the cause relied upon. The testimony, whether direct or circumstantial, must reasonably exclude every hypothesis other than the one relied on.

It appears from the testimony of appellant's witness—and these facts do not appear to be disputed—that the development of tuberculosis in the shoulder from traumatism is an unusual consequence. In fact, tuberculosis from traumatic influence is most unusual in all cases. Joint infection from injuries is the exception and not the rule. Out of thirty-five hundred cases observed at Toronto General Hospital, only 1.9 per cent of joint infections were in the shoulder. In the hip and knee, the percentage is somewhat greater. It is shown, also, that tubercular germs are present in the body of most every person, that some are "very subject" to tuberculosis. The opinion of the specialist called by respondent is that it would take, in a man of the age of appellant, from fourteen to twenty-four months to develop the condition in which he found appellant at the time he was brought to the hospital ("that is the shortest time"), and that the condition he found could not have been produced by the accident complained of; that the germ must be there; that accidents do not produce the germ.

The opinion of the surgeon is epitomized in one of his answers:

"A. No, the accident could not cause tuberculosis in a joint. This man undoubtedly had tuberculosis infection in that joint for a period of two years before it lighted up. These joints always have to start sometime, showing acute symptoms, and these acute symptoms started 'it. A severe accident might hasten it. Might hasten it. Q. It would not produce it? A. Not a small injury; it takes a very severe injury. These minor injuries have very little bearing upon the course of the disorder. It is the infection in the joint that is primary and these other little injuries are only secondary or incidental to the condition. Q. Now, doctor, according to your opinion, then, this disease which you found in the joint must have existed long before the time when he claims he was first injured? A. In the ordinary course? Q. Yes. A. Yes, sir. Q. As far as surgery can determine it? A. Yes, sir."

Granting that a possible or even probable connection between the present condition and the negligent act was shown by the appellant, we think respondent has so far overcome the showing as to leave the subject open to speculation and conjecture rather than to right reason. In such cases, medical expert opinion is but an admeasurement of possibilities, and the court will, upon challenge to the sufficiency of the evidence, consider the whole evidence. In *Parmelee v. Chicago, Milwaukee & St. P. R. Co.*, ante p. 185, 158 Pac. 977, we said:

"If there is nothing more tangible to proceed upon than two or more conjectural theories, it is immaterial that the theory suggested in the interest of the servant is more probable than that suggested in the interest of the master, so that the rule is laid down: 'If the existing state of affairs, however dangerous, might, according to the ordinary experience of mankind, have been due to other causes than negligence for which the defendant was responsible, then it was for the plaintiff to exclude the operation of those causes by the greater weight of evidence.' *Brooks v. Kinsley Iron & Machine Co.*, 202 Mass. 228, 231, 88 N. E. 771.

"This would seem to imply that, in determining the weight of the evidence, and whether the case should have been submitted to the jury, the court might properly take into con-

sideration the several circumstances as testified to by the witnesses for both parties."

See, also, *Stone v. Crewdson*, 44 Wash. 691, 87 Pac. 945.

Bearing in mind the facts, and the long time intervening between the accident and the acute manifestation of the disease during which appellant was not under observation, the following seems apt:

"We do not understand that a slight injury, resulting from negligence, will warrant a recovery for a disease afterwards developed, unless it shall be shown by proof that such latter condition would naturally or probably develop therefrom; and to make the employer liable it must have been such that he should have reasonably anticipated that it could or would probably so result or have a like result." *Pecos & N. T. R. Co. v. Collins* (Tex. Civ. App.), 173 S. W. 250.

We have hitherto had occasion to apply the principle governing this case. *Stone v. Crewdson, supra.* The record in that case shows that a woman pregnant with child was assaulted. She sued for damages, setting up the assault as the cause of her misfortune and subsequent suffering. She was so frightened and terrorized by the conduct of the defendant that she fainted and soon thereafter experienced severe pains in the abdomen and through the hips, followed by a slight hemorrhage which recurred fourteen days later. She went about her usual avocations for thirty-three days, when she miscarried. Two physicians testified that, while the cause relied on would be exceptional, the result was probable. One physician said, in answer to the hypothetical question "as to the probability of the fright or nervous shock having produced the miscarriage": "In the absence of other known causes, I should suspect that was the cause." To the same question, the other physician answered: "Yes, in my opinion, that would be the cause of the miscarriage. And yes, I should judge that it was."

The answer relied on by appellant, and upon which his case must depend, if sustained, is: "I would say that the injury is the determining cause of it"; and:

"In such a condition as we find the shoulder joint in and this sort of a disease coming in a person who has been perfectly well prior to that time, it is the most natural thing in the world to assume that the injury was the determining cause. The bruise in the shoulder made it possible for the infection to start in that bruised portion and then continue, whereas, if the tissues had been perfectly normal, as they were in the other shoulder, it would not have started there. Usually it requires some such bruised condition of the tissues for the germ to find a lowered resistance in that particular spot and then it starts to grow there and produces the tuberculosis of the bones and joints."

The witness goes no further than did the experts in the *Stone* case. A probable cause in a given case is the likely cause, and the answer of the surgeon that the fall was the determining cause is, after all, only the opinion of the surgeon. From the nature of things and from his testimony taken as a whole, it is clear that he intended to go no further than to say that the tubercular joint was a likely result of the injury.

Although a verdict was sustained upon the testimony of a physician who had attended the party plaintiff from the beginning, and who had the advantage of observation upon which to rest his opinion, just such testimony as we have in this case was rejected by the Supreme Court of Wisconsin in *Gray v. Chicago & N. W. R. Co.*, 153 Wis. 637, 142 N. W. 505. The court says:

"The defendant's contention is that there is no sufficient evidence to establish any causal relation between the physical injury and the tuberculosis which existed more than a year later, and that the relationship between the two is purely conjectural. There was medical testimony to the effect that an injury such as plaintiff received is likely to induce or incite tuberculosis by reducing the natural resistance of the patient, lowering his vitality, and putting him in a condition whereby he is unable to withstand infection. If this testimony were the only testimony tending to show a causal relation between the injury and the tuberculosis we should agree with the defendant's contention. If decreased powers of resistance resulting from an injury are to be considered as a link in the

chain of causation between the injury and a disease developing years afterward, it is very evident that a large, if not an almost limitless, field is opened up for speculation by juries in a region where there can be no guide and no probability of just results."

We have, then, the established facts that tuberculosis coming from a bruise is the unusual rather than the usual thing, and that it often develops without a known cause, and a controversy of opinion, one surgeon saying that he would assume as the most likely thing in the world that the fall caused the injury, and another saying that the theory of the appellant is impossible.

While the law permits expression of opinion, when doctors disagree in their diagnosis and prognosis in a field where the reliance of laymen must depend upon professional skill and learning in an obscure science, it will not tolerate speculation as to the cause of a condition. That must be proven with reasonable certainty.

We feel that the reasoning of the court in the *Stone* case is conclusive:

"The time between the alleged cause and the actual miscarriage—thirty-three days—was, according to the expert testimony, greatly in excess of the ordinary time in such cases; and the answers of the physicians to questions propounded to them, which were based upon the testimony, convince us that the jury could not have determined the proximate cause of the miscarriage without entering into the realms of speculation, conjecture, and guesswork, and this they are not empowered to do . . . ." *Stone v. Crewdson,* *supra.*

We are not to be understood as limiting the extent or scope of medical expert testimony or proper prognosis based upon established facts. That is a very different thing from what is attempted in this case, which is to fix a proximate cause for a disease become suddenly aggressive seven months after a slight injury, and which may have developed from some other cause or without traumatic intervention.

The law will note and compensate for consequences of injuries reasonably certain to occur, and will base its judgments upon opinion evidence; but we know of no cases holding that the proximate cause of a disease can be traced by opinion evidence to an accident when the testimony, considering the lapse of time and the nonobservation of medical men, goes no further than to show that the injury might have been a sufficient cause. The disease with which appellant is afflicted is not shown to be the usual, natural or probable consequence of the slight injury sustained. The contrary is shown, and the case falls within the general principle so well stated in *Milwaukee & St. Paul R. Co. v. Kellogg*, 94 U. S. 469, and adopted in *Scheffer v. Railroad Co.*, 105 U. S. 249:

"But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

In that case, action had been brought to recover for the death of one who was alleged to have become insane eight months after an accident and who, while laboring under such mental aberration, committed suicide. The court concluded:

"The suicide of Scheffer was not a result naturally and reasonably to be expected from the injury received on the train. It was not the natural and probable consequence, and could not have been foreseen in the light of the circumstances attending the negligence of the officers in charge of the train.

"His insanity, as a cause of his final destruction, was as little the natural or probable result of the negligence of the railway officials, as his suicide, and each of these are casual or unexpected causes, intervening between the act which injured him, and his death."

It will be noted that the court concludes that the insanity of Scheffer was as little the natural or probable result of the negligence complained of as the ultimate act of suicide; that

each are casual and unexpected intervening causes for which no recovery can be had.

Affirmed.

MORRIS, C. J., MOUNT, ELLIS, and FULLERTON, JJ., concur.