JOHN J. PETERSON v. NELS K. LANGSTEN.[1]

May 6, 1932.

No. 28,835.

[1]Reported in 242 N. W. 549.

102

*Keller, Broady & Chapin,* for appellant.

*F. W. Zollman* and *Barrows, Stewart, Jackson & Junkin,* for respondent.

HOLT, J.

A verdict was directed in favor of defendant, and plaintiff appeals from the order denying a new trial.

The action is to recover for the wrongful death of plaintiff's wife, Mrs. Peterson, alleged to have been caused by defendant's so negligently operating his automobile, in which deceased, her husband, and their two-year old daughter were riding, that the car overturned, bumping and bruising the occupants. Defendant and plaintiff are related. Their parents lived near Echo a short distance west of Redwood Falls. Defendant desired some financial assistance from plaintiff's father and asked that plaintiff go with him from St. Paul, where both plaintiff and defendant resided. They left St. Paul in defendant's car after supper on May 10, 1930, and had reached a place near Echo about midnight, when the car overturned, with the result stated. Plaintiff claims the speed was negligently excessive, because of the water-filled ruts in the road at that place. Defendant asserts that neither the speed nor the control of the car but the blow-out of a tire caused the accident. We need not consider defendant's negligence, for we assume, as did the trial court, that the evidence made that a jury issue. The trial court directed a verdict on the ground that plaintiff's evidence failed to furnish a reasonable basis for a finding that any wrongful or negligent act of defendant caused the death of Mrs. Peterson; or, in other words, the evidence of causal connection between the injury of May 10,

1930, and the death 285 days thereafter, was mere conjecture or guess.

The evidence is that two or three days before the accident the deceased conceived. There was mal-implantation, so that the placenta covered the os of the uterus, forming what in medical parlance is called central placenta praevia. This created a situation of grave danger to both mother and child when the time of delivery should arrive. Either the placenta would have to be broken through before delivery, which might suffocate the child and cause death to the mother from hemorrhage, or else delivery must be by an operation known as the Caesarean section. Plaintiff had only one medical expert, the attending physician, who admitted that the latter method of delivery was the better and safer. On February 18, 1931, the doctor discovered the existence of central placenta praevia, and in consultation with another doctor it was determined to break through the placenta, using what is termed the Vorhees bag method. This was done the next day, and the result was death for both mother and child. Some women die in childbirth in spite of the efforts of the best medical help. But in cases of central placenta praevia the mortality is very high. Fortunately such cases are of rare occurrence. An autopsy was performed by the doctor. No organic trouble or wound was found except that the right kidney was badly diseased and there was a tear due to the forced delivery.

The mal-implantation resulting in the dangerous central placenta praevia cannot be attributed to the accident of May 10, 1930. The doctor says that no one can tell what causes the implantation in an improper place, and he does not suggest the possibility of the accident having anything to do with creating that condition. Nor does he testify that the diseased kidney is traceable to any injury received on May 10, 1930. However, on cross-examination, the doctor was asked this question:

"It is your professional opinion that this woman would not have died irrespective of a shaking-up occurring some nine months and ten days before, as is in the evidence here?"

His answer was: "I would have reasonable certainty. I would say she might not have died."

Then the attorney summed up his testimony in this question:

"As I understand your answer to the last question, it was in your opinion to a reasonable certainty, but for the occurrence of May 10, she might not have died. Can you say that, but for that, to a reasonable certainty in your opinion she would not have died, in view of these various authorities you have agreed to?"

To this he answered: "That led up to the condition she was in on the day of delivery? * * * Yes. * * * To a reasonable certainty."

Were this the whole of the medical expert's testimony it might perhaps be for the jury to say whether any injury received in the accident of May 10, 1930, caused or contributed to cause the death of Mrs. Peterson on February 19, 1931. The doctor admits that death was due directly to the hemorrhage; that the hemorrhage was intentionally produced in attempting delivery; that it was made necessary, because of central placenta praevia, unless the Caesarean section was resorted to; that central placenta praevia could not result from the accident, its cause being unknown; and that the diseased kidney could not be attributed to the accident.

We then come to the vague surmise that because from the accident Mrs. Peterson was shaken up and made nervous she could not during the pregnancy keep in the usual healthy condition that would have followed if she could have continued in the customary activities of her housework. She had to take to her bed at times and frequently spend part of the days resting. The doctor thinks this weakened her system so that she could not stand the loss of the amount of blood she could have stood had she been in her normal health during pregnancy. That this conclusion is based upon pure conjecture when it comes to connecting it with Mrs. Peterson's death appears when one considers the high mortality in deliveries where there is central placenta praevia. The doctor had assisted in but one case previous to this, and that was fatal to mother and child.

One must also consider the excessive hemorrhage to be expected in the method of delivery here employed. When, where central placenta praevia exists, deliveries prove fatal in more than half of the cases, shall a jury be allowed to guess that an accident which severely shook up the mother at the time of conception and subjected her to some pain or illness during pregnancy was a contributing cause to her death from hemorrhage in this operative delivery, which could not be made without abnormal blood loss? We think not. To permit this would be to let the jury find proximate cause by guess. This appears so from the admission of the doctor that whereas some persons cannot withstand the loss of a pint of blood others may survive the loss of three quarts. The doctor estimates that Mrs. Peterson lost three pints just prior to and during the delivery. There was a post partum hemorrhage, during which she died; but the quantity then lost, he, not being present, does not know, and of course cannot estimate. Aside from this, and virtually demonstrating that the doctor's opinion above quoted is of no probative value, we have the death certificate made by him after the autopsy thus giving the cause of death:

"Central Placenta Praevia. Duration: 9 months. Contributory (secondary) Post partum Hemorrhage. Did an operation precede death? Yes."

The blank on which this certificate was made invited the one executing it to state, in cases of death from violent causes, the means and nature of the injury and whether accident or otherwise; but nothing is found as to any accidental injury. The doctor's record of Mrs. Peterson's condition from August 17, 1930, his first attendance to the end, also indicates no physical injury from the accident then present, the hemoglobin test, pulse, blood pressure, and urine being near normal and so remaining with slight reduction in hemoglobin count toward the end of the pregnancy.

We think the medical opinion of a connection of the accident of May 10 with Mrs. Peterson's death from hemorrhage during delivery is so conjectural and unsatisfactory that no verdict could be permitted to rest thereon, and the court rightly directed a ver-

dict for defendant. The accident did not set in motion any cause to which death could be attributed. The central placenta praevia was an intervening, independent act of nature in no way caused or contributed to by the accident. Obviously a condition for which defendant was in no way responsible created the necessity for the operative delivery, which directly and proximately caused death through loss of blood, the usual result in the majority of such misplaced placenta. There is here a natural account or cause for the hemorrhage which resulted in the death. The accident was not a contributing cause to the operative delivery or to the hemorrhage. Hence there can be no proximate contributing cause to Mrs. Peterson's death in any negligence of defendant occurring nine months previously when the car he drove and in which she was riding overturned.

A case much in point is Sporna v. Kalina, 184 Minn. 89, 237 N. W. 841, 76 A. L. R. 1280. The reasons there stated for finding no proximate cause between the death and a previous injury inflicted by the defendant's negligence applies with more force to the facts of this case. It is clear that in cases where there is evidence that a defendant's negligence injured or contributed with the negligence of a third party to injure a plaintiff's intestate, so as to cause death by developing serious infection or disease or aggravating an existing infirmity or ailment, proximate cause is made out. So also where in treatment for the injury inflicted death results either from the treatment or from an operation deemed necessary to effect a cure, or from such a disease as pneumonia, which is apt to attack one confined in a hospital suffering from shock of injury or from operation to relieve from the injury. Such are the cases cited and relied on by appellant by this and other courts, viz. Coultas v. Hennepin Paper Co. 114 Minn. 309, 131 N. W. 319; Healy v. Hoy, 115 Minn. 321, 132 N. W. 208; Wendt v. Bowman & Libby, 126 Minn. 509, 148 N. W. 568; Moehlenbrock v. Parke, Davis & Co. 141 Minn. 154, 169 N. W. 541; Hansman v. Western Union Tel. Co. 144 Minn. 56, 174 N. W. 434; Louisville & N. R. Co. v. Chamblee, 171 Ala. 188, 54 So. 681, Ann. Cas. 1913A, 977; St. L. I. M. & S. Ry. Co. v. Steel, 129 Ark. 520, 197 S. W. 288; Blackwell v. American Film Co.

Inc. 189 Cal. 689, 209 P. 999; Brown v. Beck, 63 Cal. App. 686, 220 P. 14; Beauchamp v. Saginaw Min. Co. 50 Mich. 163, 15 N. W. 65, 45 Am. R. 30; Hamel v. Southern Ry. Co. 113 Miss. 344, 74 So. 276; McCahill v. New York Trans. Co. 201 N. Y. 221, 94 N. E. 616, 48 L.R.A.(N.S.) 131, Ann. Cas. 1912A, 961.

In the case at bar we have direct proximate cause of death, viz. loss of blood, a natural result of the operative delivery necessitated by the central placenta praevia. To say that the injury received by Mrs. Peterson some nine months previously was a concurring proximate cause of death, by lessening her blood supply or power of resistance so that death because thereof followed, we think would be mere conjecture and surmise.

There are errors assigned upon the rulings of the court in sustaining objections to certain questions asked by plaintiff of the doctor calling for his opinion concerning the connection between the injuries received by Mrs. Peterson on May 10, 1930, and her subsequent death, and striking out certain answers given by him relative thereto. Even if error be conceded in any of these rulings, the final opinion of the doctor, permitted to remain in the record, was stated in as strong terms as plaintiff could possibly desire, the doctor on cross-examination saying that he was "reasonably certain" of the correctness of the opinion he had given. It is true that plaintiff could properly ask his medical expert to give the reasons for the opinion. It might aid the jury in determining the weight to be given thereto. Milliren v. Federal L. Ins. Co. 185 Minn. 614, 242 N. W. 290. But since we hold that the doctor's opinion, no matter what reasons he may advance to support it, is not sufficient upon which to predicate a verdict that the injury of May 10, 1930, sustained by Mrs. Peterson, proximately caused or contributed to her death, no prejudice resulted from striking testimony stating the doctor's reasons for his opinion.

The order is affirmed.