## M. J. HONER v. J. A. NICHOLSON.[1]

September 4, 1936.

No. 30,795.

*Snyder, Gale & Richards,* for appellant.
*J. B. Himsl* and *William P. Murphy,* for respondent.

LORING, JUSTICE.

January 13, 1934, plaintiff's intestate had his shoulder sprained and was otherwise bruised in a collision between the car in which he was riding and that of defendant. On this account he abstained from work for about one week but complained of soreness and fatigue during the remainder of his life. Five weeks and three days (February 20, 1934) after the accident, while on his way to work in the morning, he was exposed for about an hour to severe cold while the car in which he was riding was being repaired. Five days later he died of lobar pneumonia.

In our opinion the evidence of the medical experts wholly fails to connect the injury received in the accident with the death of

[1]Reported in 268 N. W. 852.

plaintiff's intestate. Dr. Clark, the attending physician, who first treated the deceased five days after the accident and who was called in when the deceased became ill of pneumonia over five weeks later, was called as a witness for plaintiff. He testified that in his opinion the pneumonia and death in no way resulted from the injury. He stated that the injury was "too far away in time." Dr. Clark stated that the exposure on February 20, 1934, was the cause of the pneumonia that resulted in death.

Two other doctors testified for plaintiff. Neither had seen the deceased at any time nor been consulted by him. In answer to hypothetical questions, based in part on the testimony of Dr. Clark, they stated that it was their opinion that the accident weakened the deceased's resistance to the pneumonia germ and was a contributing cause of death. To connect the accident with the subsequent pneumonia, plaintiff relied upon evidence adduced at the trial tending to show that from the date of the accident deceased had a rasping cough. The attending physician had no history of such a cough and testified that in all probability deceased did not complain of it to him. The other two doctors conceded that it is impossible to ascertain from the physique of a patient what his resistance to pneumonia may be. Strong, healthy, and athletic men in many instances have a low resistance, while weak, frail looking men may have a high resistance. The virulence of the germ is often the determinative factor. Admittedly one in good health will have higher powers of resistance than a person in poor health. All the medical experts agreed that the germ that caused the attack in the present case was particularly virulent. Both doctors, whose testimony is relied upon by plaintiff, stated that as far as they knew the pneumonia attack might have been fatal had the accident never occurred. Neither had any way of knowing deceased's physical condition prior to the accident or whether his resistance to a virulent pneumonia germ was high or low. They had no way of telling how much the injury had lowered resistance.

Taking the testimony of the three medical experts who were called by plaintiff, we find that the one best qualified to testify, the attending physician, stated that the accident and consequent injury

were too remote to have had any connection with the fatal termination of the attack of pneumonia. The injury was minor in character. The other two doctors, while stating that deceased's resistance had been lowered by the injury and that it was a contributing cause of death, admitted that death might have ensued in this particular case regardless of the injury. In that state of the record it seems to us that the opinions of the two nonattending medical experts (which is the only evidence attempting to connect the injury with the death) establish a remote rather than a proximate connection between the injury and the death.

In Anderson v. Anderson, 188 Minn. 602, 248 N. W. 35, cited by plaintiff, there were facts directly connecting the injury with the subsequent pneumonia.

The burden was on plaintiff to establish the causal connection between the injury and subsequent death. We said in Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 441, 215 N. W. 678, 679:

"The negative prevails automatically without evidence either way, and should prevail in the absence of a preponderance of proof for the affirmative. * * * The proof must not only agree with but must also furnish *reasonable* support for the 'hypothesis which it is adduced to prove.' Lillstrom v. N. P. R. Co. 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587."

See also Peterson v. Langsten, 186 Minn. 101, 242 N. W. 549.

Taking the evidence of the plaintiff's witnesses at full face value, as a matter of law it does not show connection as proximate cause between the accident complained of and the death of the plaintiff's intestate. In holding as we do we do not assume to pass upon any of the open questions of fact in the case, but merely to distinguish between cause and condition or occasion. The accident was too remotely connected with the death to be considered as a material factor in its connection therewith.

In so holding we are not reviewing the verdict on questions of fact. We are examining a decision composed of the rulings of both judge and jury, each part of the judicial mechanism, the product

of which is decision. Compare State v. Ramirez, 34 Idaho, 623, 203 P. 279, 29 A. L. R. 297, 304.

Even though we nullify the verdict, we are not reviewing the action of the jury. The result follows our decision that the trial judge was in error in submitting the case to the jury. In other words, we think he went wrong in answering affirmatively the *question of law* which should have been answered in the negative— whether on the whole evidence there is any legal basis for a verdict for plaintiff. Such a determination is but the exercise of an appellate judicial function which has been familiar in American and English jurisprudence for centuries.

The question, wholly of law, is whether on the element of proximate cause there is evidence warranting submission to a jury. It is not enough that there was some medical testimony corroborating, not the evidence for recovery (there was no such evidence), but only the affirmative hypothesis. Our duty is not performed without examining that evidence to ascertain whether it has enough substance to support an affirmative finding. As matter of law, it has not, in our opinion.

In Gray v. C. & N. W. Ry. Co. 153 Wis. 637, 142 N. W. 505, 509, the verdict for a tubercular plaintiff was sustained upon the "direct testimony" of the attending physician that his patient's disease resulted from the injury. But the court, speaking through Mr. Chief Justice Winslow, said [153 Wis. 649]:

"There was medical testimony to the effect that an injury such as plaintiff received is likely to induce or incite tuberculosis by reducing the natural resistance of the patient, lowering his vitality, and putting him in a condition whereby he is unable to withstand infection. If this testimony were the only testimony tending to show a causal relation between the injury and the tuberculosis we should agree with the defendant's contention. If decreased powers of resistance resulting from an injury are to be considered as a link in the chain of causation between the injury and a disease developing years afterward, it is very evident that a large, if not an almost limitless, field is opened up for speculation by juries in a region where there can be no guide and no probability of just results."

In City of Nashville v. Reese, 138 Tenn. 471, 197 S. W. 492, L. R. A. 1918B, 349, there was the same kind of medical testimony we have here that pneumonia was of traumatic origin. On that point the decision was that the personal injury was "not the proximate cause of death from a germ disease," although it had weakened the resistance of the injured person. To the same effect see Seifter v. Brooklyn Heights R. Co. 169 N. Y. 254, 62 N. E. 349.

Frequently there is such direct connection between trauma and disease that it is apparent without medical testimony. Nicoll v. Sweet, 163 Iowa, 683, 144 N. W. 615, L. R. A. 1918C, 1099, Ann. Cas. 1916C, 661. Or if the connection is not evident otherwise, medical testimony may make it so. Keegan v. M. & St. L. R. Co. 76 Minn. 90, 78 N. W. 965. The intervention of disease as the mere "terminal cause" does not relieve from liability. Loveless v. Red Top Cab Co. 158 Wash. 474, 477, 291 P. 344, 79 A. L. R. 347, 350. (For additional cases, see the annotation, "Injury as proximate cause of death where disease intervenes," 79 A. L. R. 351.) Time cannot be the determinative factor, although in some cases that intervening between the original wrong and the result ascribed to it may be so short as to be significant and relevant. But if weakened resistance alone satisfies the requirement of proximate causation, the plaintiff should recover irrespective of the lapse of any time short of that of the statute of limitations. That, we think, shows the practical flaw in the thesis that justifies recovery for lowered resistance alone. That doctrine assumes intervention of a cause succeeding the original wrong but antecedent to the operation, as contributing cause, of the lowered resistance. If that intervening cause be dependent on his wrong, the first wrongdoer remains liable. But if it is independent of his wrong, as it must have been here of defendant's negligence, it is settled law that there can be no recovery.

The whole point is that here, under established law, the medical testimony cannot properly be given the effect of creating a fact issue. On its face it is but conjecture, and affirmative decisions cannot stand on such unsupported speculation even though it is a professional emanation.

The judgment is reversed with directions to enter judgment for the defendant notwithstanding the verdict.

DEVANEY, CHIEF JUSTICE (dissenting).

I cannot concur in the majority opinion.

The facts which necessarily must be stated in greater detail for purposes of dissent are as follows: On January 13, 1934, plaintiff's intestate, who was a young man of 32 years, was riding as a passenger in the left rear seat of an automobile owned and operated by one M. A. Scales. The car was traveling in an easterly direction along state trunk highway No. 23 in Stearns county, Minnesota. This highway is paved with concrete, 18 feet wide, and has dirt shoulders two or three feet wide. A black line marks the center of the pavement.

On the same date, on said highway, defendant was proceeding in his automobile in a westerly direction. At a point about one-fourth of a mile west of St. Cloud defendant attempted to pass another car traveling in the same direction. After drawing up ahead of the automobile, he cut in to return to the right side of the pavement. In so doing, his car "slued around" and collided with the Scales car, which was proceeding in the opposite direction at a speed of about 25 miles per hour, stripping off the left side of that vehicle. The Scales car then proceeded for a short distance and rolled over into a ditch along the road. The accident occurred at about 4:30 o'clock in the afternoon.

Honer got out of the overturned automobile. He stood around at the scene of the accident for about an hour and then was taken to a point about four blocks from his house, from where he walked the remaining distance to his home.

Because of the injuries he had incurred, Honer stayed away from his work for one week, when he was advised by his physician that he could return.

A short time later he made a settlement with defendant's insurer of his claim against defendant and signed a release.

Five weeks and three days after the accident, while on his way to work one morning, Honer was taken ill with lobar pneumonia. Five days later he died.

The case came to trial on April 12, 1935. The jury returned a verdict for plaintiff in the sum of $1,250. Defendant's motion for judgment notwithstanding the verdict was denied and judgment entered. This is an appeal from the judgment.

Three questions are presented:

(1) Is there sufficient evidence of negligence on the part of the defendant?

(2) Is there sufficient evidence of fraud to justify the setting aside of the release?

(3) Is there sufficient support in the record for the finding that injuries received by intestate in the accident were the proximate cause of his death?

1. Defendant was driving his automobile at a speed of about 35 miles per hour. The pavement was somewhat slippery because of the ice and snow thereon. The testimony shows that defendant attempted to pass another vehicle proceeding in the same direction when the Scales car was only about 100 to 150 feet from the two oncoming automobiles. There is ample evidence that defendant in attempting to pass the other car swung out to the left of the center line suddenly and quickly and then attempted to cut back to the right in the same manner after drawing to the front of the other car. In the words of Mr. Scales, defendant "whipped around the other car." The defendant's car then skidded, and the collision resulted. There is ample evidence in the record from which the jury could find that defendant was negligent and that in operating his automobile he violated 1 Mason Minn. St. 1927, § 2720(13), which provides that a driver of a vehicle shall not turn to the left of the center line of the highway in order to overtake and pass another vehicle unless the left side is clearly visible and is free of oncoming traffic for a sufficient distance to allow him to pass with safety.

2. Nor is there any merit to the contention of the defendant that there is insufficient evidence upon which the jury could base its verdict setting aside the release on the grounds of fraud. Plaintiff's intestate settled his claim for the sum of $32. The insurance

62

adjuster at the time of making the settlement stated to Honer that defendant's insurance had lapsed; that he would have to take his chances on obtaining something from the defendant; that the insurance company had no responsibility but that it would settle for a reasonable amount rather than lose defendant as a customer. These statements were false. Defendant's insurance policy was in full force and effect at the time of the accident and at the time these statements were made.

It is well settled that a release may be avoided for fraudulent misrepresentation of a material fact or circumstance which induces the execution thereof. Petterson v. Butler Bros. 123 Minn. 516, 144 N. W. 407; 15 Minn. L. Rev. 805. The misrepresentations here made fall within this category. They were made with the obvious intent and purpose of obtaining a settlement for as small a sum as possible. The jury could well find that they conveyed to the intestate the idea that defendant himself was perhaps not financially responsible. To say that whether or not a defendant's insurance policy is in effect is not a material fact or circumstance where the injured party is not aware of the defendant's financial responsibility would be to blind ourselves to the obvious fact that the amount for which one will settle a claim is markedly affected by the certainty or uncertainty of collection in case of a successful lawsuit. If that were not the fact, it is safe to say that the statements concerned herein would never have been made. Thus it seems clear that they were material, and the jury could well find, considering all the circumstances, that they induced the intestate to accept the low sum he did in settlement of his claim. The point of disagreement between the majority opinion and the dissent is whether the record indicates a causal connection between the injuries received and the intestate's death. ,

3. The testimony on behalf of plaintiff is as follows: While the deceased stood around at the scene of the accident he complained of an injury to his right shoulder. He appeared to be cold, and his teeth were chattering. He arrived home between 6:00 and 6:30 o'clock in the evening. It was observed that there were two large lumps on the back of his skull. He was pale and was still chilled

and cold. He appeared to have pain in his right shoulder and in his chest. He had no appetite. He was in pain during the entire night. The pain continued the next day. He developed a cold accompanied by a "hackling cough." When he coughed it appeared to give him physical pain. These symptoms persisted to a greater or lesser degree during the entire week after the accident.

Honer returned to work one week after the accident. When he returned home in the evenings he appeared to be unusually tired and fagged. During the period he was working before his death he was always in physical pain in his chest and back. He required assistance in putting on and taking off his coat. His appetite was poor. His cough and the accompanying pain persisted during this period. He acted listless and appeared to be failing instead of improving. Further review of the evidence is unnecessary. Suffice to say that it indicates that these conditions continued up until the morning he was taken to a hospital.

Of course there was testimony offered on behalf of the defendant tending to counteract and contradict that introduced by plaintiff; which to believe, in my opinion, was for the jury to decide, and, considering the state of the record, it is not within the province of this court to say that its decision was erroneous.

The same is true of the medical testimony in this case. Dr. Clark, the attending physician, diagnosed intestate's injury as a sprained shoulder. Dr. Kern, Dr. Clark's partner, who examined intestate, diagnosed the case as "a sprained shoulder joint, contused shoulder joint and arm and chest." Both of these men, as well as one other expert, testified that they were of the opinion that the injuries incurred in the accident were in no way the cause of Honer's death. On the other hand, Doctors Goers and Adams, experts called by the plaintiff, stated that in their opinion loss of resistance due to the injuries, shock, and exposure was the proximate cause of death.

On this state of the record, appellant's contention that he is entitled to judgment notwithstanding the verdict is, in my opinion, not well taken. The conflicting testimony created a question of fact which was properly for the jury to determine, and we should not say that it appears as a matter of law that the injuries received

did not lower intestate's resistance and thereby cause his death. In the case of Anderson v. Anderson, 188 Minn. 602, 248 N. W. 35, 37, this precise question was presented. The court, in speaking of medical testimony in support of the theory that plaintiff's intestate had died as a result of injuries received in an automobile accident, stated [188 Minn. 607]:

"There was other medical testimony corroborating this view. There was medical testimony to the contrary. Whether the injury was the proximate cause of the death was for the jury."

See also Turner v. Minneapolis St. Ry. Co. 140 Minn. 248, 167 N. W. 1041.

I have not overlooked defendant's contentions that intestate needlessly stood around the scene of the accident and became chilled, and that on February 20, in the morning, when it was also chilly, he stood around outside on a road while a tire was being changed on an automobile in which he had been riding. Whether these actions were those of a reasonably prudent man and what their effect was on the condition of intestate, considering all the circumstances, such as the fact that Honer appeared to be dazed directly after the accident, and that on both occasions he was warmly dressed, were also questions of fact for the jury, to be determined in light of all of the medical testimony. In my opinion, they are not questions properly before this court for determination.

Defendant was not entitled to judgment notwithstanding the verdict. The judgment should be affirmed.

HILTON, JUSTICE (dissenting).

I concur in the dissenting opinion of the Chief Justice.