## Railroad *v.* Ginley.

### (*Nashville.* February 24, 1897.)

1. RAILROADS. *Conductor's authority to employ servants.*

   The conductor of a railway train has no authority, by virtue of his position merely, to employ servants or agents for the company. But in emergencies, requiring additional service for the proper management, operation or protection of his train, the conductor is invested by law and from necessity with an implied authority to employ such agents and servants, and for such time only as are required by the particular circumstances. (*Post, pp. 474, 475, 477, 478.*)

2. SAME. *Existence of emergency authorizing conductor to employ servants a question for jury.*

   Whether, in the particular case, such emergency existed as conferred implied authority upon the conductor to employ servants for the company, is a question of fact for the jury, and this Court will not disturb their decision, if it can be sustained by taking as true that legitimate view of the evidence most favorable to the successful party. (*Post, pp. 475, 476.*)

   Cases cited and approved: Citizens, etc., Co. *v.* Seigrist, 96 Tenn., 120; Railroad *v.* House, 96 Tenn., 557.

3. SAME. *Case of emergency authorizing conductor to employ servanst for company.*

   Where a freight train engaged in switching "broke in two," and the rear portion, comprising several cars, was running backward, unattended, down grade, at such a rate of speed as to greatly imperil the detached cars by derailment at a switch, or by collision with stationary cars on the track, unless sooner arrested, there existed such emergency as authorized and justified the conductor, in the absence of sufficient and available regular servants, to employ for the company any by-stander to aid in arresting the cars. (*Post, pp. 476, 477.*)

Railroad v. Ginley.

Cases cited and approved: 62 Iowa, 736; 83 Ala., 518; 50 Minn.,
220; 98 Ind.. 358; 121 Ind., 353.

Cited and distinguished: Railroad v. McDaniel, 12 Lea, 386.

FROM MONTGOMERY.

Appeal in error from Circuit Court of Montgomery
County.  M. D. SMALLMAN, J., sitting by inter-
change.

BURNEY & BAILEY for Railroad.

LEECH & SAVAGE for Ginley.

CALDWELL, J.  Patrick Ginley recovered a judg-
ment for $800 against the Louisville & Nashville
Railroad Company, for personal injuries to his minor
son, John, while temporarily in its employment as a
brakeman.  The railroad company appealed in error,
and presented several reasons for asking a reversal
and new trial.

Among these reasons, and the only one that need
be considered in this opinion, the others being con-
sidered orally, is the alleged want of authority on
the part of the conductor, on whose invitation John
Ginley claims to have entered the service, to make
the employment for the company.  There is no
proof in the record, though containing all the evi-
dence, that the conductor, who is alleged to have

made the employment in question, had express authority from the company to engage persons for its service. Hence, the company's counsel contend that there is, in no event, any ground of liability on its part for the injuries received by John Ginley, and, consequently, that the judgment is without legal support, and should be reversed.

To determine whether or not this contention is sound, requires a more elaborate statement and consideration. As a general rule, the conductor of a railway train is without authority to employ servants for the company he represents; and, to justify his act in so doing, when questioned, it must ordinarily be shown that special authority therefor was expressly conferred. Yet emergencies may sometimes arise in which the proper management, operation, and protection of his train imperatively require other or additional service. In such cases his contracts of employment will bind the company, upon the ground of implied authority.

Elliott aptly illustrates the emergency doctrine, as applied to the acts of a conductor, and gives his own opinion of it in the following passage: "Thus he [the conductor] may, where other provision has not been made, employ mechanics to repair a break of the cars or machinery, which must be repaired before the train can proceed to its destination, and may engage men and teams to render the roadway or bridge secure for the passage of his train, when weakened or partially swept away by unforeseen

causes; but in such cases the authority to contract does not exist unless there is an urgent necessity for immediate action. It is the necessity which confers authority, not simply the position of conductor. Doubtless he may, in case of the sudden death or disability of the engineer, engage a competent engineer to take the train to a point where another engineer in the employ of the company can be obtained, if such employment be an urgent necessity and required to avoid disaster or serious injury to the company. It has been held that the conductor has authority, when the regular brakeman is sick or absent, and the proper and safe management of the train so requires, to supply the place of the sick or absent brakeman, and render the substitute so employed an employe of the company for the time being; but we suppose this doctrine can only apply in very rare cases, for, as a general rule, a conductor has no authority to employ agents or servants for the company. The authority of the conductor to enter into contracts for the company is created by the necessity for the exercise of such authority, and as soon as the emergency is passed, the authority terminates." 1 Elliott on Railroads, Sec. 302, pp. 408, 409.

Whether or not John Ginley was employed in an emergency in the legal sense indicated, and, consequently, under the conductor's implied authority, is a question of fact yet to be considered, and in whose determination by this Court, after an affirma-

tive verdict by the jury, that legitimate view of the evidence most favorable to the plaintiff will be taken as true. *Citizens' Rapid Transit Co.* v. *Seigrist*, 96 Tenn., 120; *Railroad* v. *House*, *Ib.*, 557.

The accident in which the plaintiff's minor son received the injuries in this suit complained of, occurred in the company's yard at Clarksville, while the crew of one of its freight trains was engaged in switching. As the train moved out of the siding, it "broke in two," and the rear portion, comprising several cars, was running backward, unattended, down grade, and at such a rate of speed as to greatly imperil the detached cars by derailment at a switch, or by collision with stationary cars on the siding, unless sooner arrested in their increasing momentum. Seeing this danger, and none of the regular crew being near enough to perform the needed service, the conductor called to young Ginley, who was passing by, and who had occasionally done work for the company, and asked him to board the detached cars and stop them. The boy, thereupon, promptly mounted the cars and soon succeeded in stopping them before they had done any harm, and without injury to himself. This having been accomplished, the conductor, who was in command, and fully advised of the situation, negligently permitted the front portion of the train to be run against the cars that had just been stopped, with such violence as to knock to the ground the boy, who was in the act of descending with due care and caution,

Railroad *v.* Ginley.

and cause some of the wheels to pass over one of his arms, whereby amputation was made necessary, and his services to his father were rendered less valuable.

These facts unmistakably show a clear case of emergency, in which the conductor, by implication of law, had authority, and was in duty bound, to employ any suitable person at hand, to save a valuable part of the train in his charge from impending danger or destruction. The interest of the company in respect of the detached cars, to say nothing of other trains that might have been endangered, and of the welfare and safety of the public, imperatively demanded immediate remedial action on the part of the conductor, and that taken by him was the best calculated to arrest and prevent a hurtful catastrophe.

It follows, therefore, that John Ginley was upon the detached cars rightfully, in the capacity of a brakeman, and not wrongfully as a trespasser, and that the company is liable in damages to his father for the injuries inflicted in the manner stated, in so far as they may have impaired the value of the son's services to his father.

It has been held that a conductor has implied authority to employ a necessary brakeman in the place of one who is absent from his train, with or without cause (*Sloan* v. *Central Iowa Ry. Co.*, 62 Iowa, 736), or as a substitute for one who is sick (*Georgia Pac. Ry. Co.* v. *Propst*, 83 Ala., 518,

and same case 85 Ala., 203), and that the company is liable to the person so employed for injuries received by him while performing its service under the direction of the conductor. *Ib.* The doctrine of these cases was recognized, though found not applicable, in *Church* v. *Chicago, M. & St. P. Ry. Co.*, 50 Minn., 220, 221.

It has also been held, upon the same ground—that of emergency—that a conductor has implied authority to employ a surgeon to attend an injured brakeman, and that the company will be liable for the surgeon's fees. *Terre Haute & Indianapolis R. R. Co.* v. *McMurray*, 98 Ind., 358; *Louisville, N. A. & C. Ry. Co.* v. *Smith*, 121 Ind., 353.

The decision in *Railroad* v. *McDaniel*, 12 Lea, 386, is not antagonistic to that here made, for, while there was some reason for extra help and expeditious labor in that case, McDaniel, the person injured and suing for damages, was not requested by the conductor or any other authorized person to render service as in an emergency, but only by the company's stock agent, who, like McDaniel, was a passenger on a train near by.

Let the judgment be affirmed.