HUNTZICKER v. ILLINOIS CENT. R. CO.

(Circuit Court of Appeals, Sixth Circuit. May 9, 1904.)

No. 1,267.

1. MASTER AND SERVANT—FELLOW SERVANT—EMPLOYMENT.

Deceased, a young man, desiring railroad employment, applied to defendant's trainmaster, with whom it was agreed that deceased should go on the road, and learn by observation and practice the duties of a flagman, to which end the trainmaster gave him a permit, directed to defendant's freight conductors, to allow him to ride on freight trains in the district, and acquire familiarity with the business. Deceased was instructed in the duties of a flagman, and performed such duties under the direction and control of the conductors of the trains until on the day of his death, as he was traveling on a freight train to his trainmaster's station to be examined, he was killed, while asleep (with the conductor's assent) in the caboose, by a rear end collision. *Held*, that deceased, while engaged in such work, was a servant of defendant, and a fellow servant of those by whose negligence he was killed.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

Bell, Terry & Bell, for plaintiff in error.

Fentress & Cooper and Cooper, Hirsh & Cooper, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. The plaintiff's intestate, Fred Fereday, a young man desiring employment in the train service of the defendant, applied to the trainmaster on one of its divisions therefor, and, it appearing that he had not had sufficient experience to qualify him for the service, it was agreed that he should go upon the road and learn by observation and practice what the duties of a flagman were, and gain the necessary experience to qualify him. To this end the trainmaster gave him the following permit:

"Fulton, Ky., May 14, 1902.

"Freight Conductors, Fulton District:

"Allow the bearer, Fred Fereday, to learn the duties of flagman on Fulton District. Good thirty days.					O. M. Sewall, Trainmaster."

¶ 1. Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Canadian Pac. Ry. Co. v. Johnston, 9 C. C. A. 596; Flippin v. Kimball, 31 C. C. A. 286.

Thereupon Fereday, using the permit, went upon various freight trains moving over the road, seeking to acquire familiarity with the business. He observed and inquired about the methods of the business, and was instructed therein, and participated in the performance of the duties of flagman under the direction and control of the conductor of the train. On June 3, 1902, Fereday having expressed a desire to be examined in respect to his proficiency, the trainmaster indicated that if he would come to his office he would examine him. A message to that effect was delivered to Fereday, who thereupon left the train on which he then was, and took another freight train moving to the destination where the trainmaster's office was located. On this train he used his permit, and continued his pursuit of information, and to some extent his practice of executing a flagman's duties. While on the way, being tired, he obtained the conductor's consent that he lie down in the caboose and sleep awhile. This he did, and while he was asleep a train coming up from behind negligently ran into the caboose, crushing it, and killing him instantly. Upon proof of these facts by the plaintiff, and of which there was no dispute, counsel for the defendant moved for a peremptory instruction by the court that the jury should find for the defendant, upon the ground, as we gather, that Fereday was a fellow servant with those by whose negligence he was killed. The request was granted, and a verdict was rendered for the defendant, and judgment accordingly.

The decisive question in the case is whether Fereday was a servant of the defendant at the time he was killed. If he was, he was a fellow servant with those whose negligence caused his death, and the defendant would not be liable. Oakes v. Mase, 165 U. S. 363, 17 Sup. Ct. 345, 41 L. Ed. 746; New England R. R. Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181. If he was a mere licensee, in the enjoyment of a privilege accorded him by the defendant, he was not a fellow servant, and the plaintiff was entitled to recover. As there was no controversy over the facts, the question became one of law, and the court performed a duty of its own in deciding it. The agreement between the parties, reduced to its elements, was that the defendant was to furnish the plaintiff the facilities for qualifying himself for the duties of a flagman; that is to say, it was to give him instruction and transportation over its road; not such transportation as is due to a passenger, but such as is ordinarily incident to the operation of freight trains by men in that service. In consideration of this, Fereday was to perform such elementary and simple service as he was capable of under the direction of the conductors of trains. If this were doubtful, the subsequent conduct of the parties confirms the construction of the contract above stated. As there was no contract for his ultimate employment as a flagman, the defendant would receive and did receive no other consideration for the privileges granted to Fereday than such services as he would render while in the enjoyment of them. It is quite true that he was not obliged to continue his relation to the company for any definite length of time or continuously during the time for which the privileges were granted; but while he did avail himself of them and was receiving the benefit he was under a duty to perform the service ex-

pected of him. Probably the service was not of much value, but, such as it was, it necessarily brought him into association and co-operation with the other servants employed in moving the trains. The rule applicable to the relation of fellow servants rests upon the idea of such voluntary association and co-operation and the assumption of the risk arising therefrom. He was enjoying the privilege and rendering the service at the time when he lost his life. We have no doubt of the correctness of the proposition contended for by counsel for the plaintiff that one who, for his own purposes, and by consent of another, assists that other in facilitating the discharge of a duty owed to himself, cannot be regarded as a servant of the other. Holmes v. N. E. Ry. Co., Law Rep. 4 Exch. 254; Wright v. London & N. W. Ry. Co., L. R. 2 B. 252. The Wright Case, which is especially relied on for the plaintiff, has always been regarded as an authority of great weight, having been decided in the Court of Appeal, consisting of Lord Coleridge, C. J., James, Mellish, and Baggally, L. JJ., and Cleasby, B., who also participated in the Holmes Case. In that case the consignee of a heifer, with the consent of the company, and for the purpose of saving delay, assisted the company's servants in shunting the car in which the heifer was shipped upon a side track for delivery, and while doing this was injured by the negligence of the company's servants. It was held that he was not a servant of the company, and was not affected by the rule applicable to fellow servants. The decision turned upon the fact that the plaintiff was engaged in furthering his own interest by hastening the unloading of the animal. This was also the ground on which the Holmes Case was decided. That doctrine rests upon the ground of the interest of the party in the ultimate object and result of that which the party does, and not an interest which he has in the mere doing of it. In all cases of service done for hire the workman has an interest in doing his work, because his wages depend upon it; but he has no interest in the result of his work. On the other hand, the party who, in his own interest, assists in, or even himself wholly performs, a duty of the other, takes no account of his own endeavor as one of service, and expects no reward from the other party for it. He regards only his own advantage in having it accomplished. This distinction, though sometimes said to be acute, is yet clear enough, and runs through all the cases which have traced to its origin the line of demarcation between a service rendered to another in an employment, and one which, though helpful to another, is performed for the purpose of promoting one's own interests. There are cases which hold that it is not even necessary that one volunteering to assist the servants of their employer should have the expectation of reward, if he has no interest in having the thing done, in order to constitute him a fellow servant. These cases go upon the ground that the party joined the servants, and was doing what he did in the assumed relation of a servant, and consequently took the risk of the negligence of his fellow servants. Degg v. Midland Ry. Co., 1 Hurls. & Norm. 773, is a leading case of this class, where a bystander volunteered to assist the company's servants in moving a turntable, and was injured by their negligence. It was held he could not recover. A similar case is Potter v. Faulkner, 3 B. & S. 800. But

that class of cases is not quite pertinent here, except that they mark the distinction on which the Holmes and Wright Cases, supra, were decided.

Applying the controlling principles which we have indicated to the present case, it seems clear that Fereday at the time of his death was a servant of the defendant. He was enjoying the privilege for which he served. He was under the control of the defendant, and the company would undoubtedly have been responsible for the manner in which he performed his service; and, what is more important, under the test above stated he had no interest whatever, other than that which any servant has in the result of his service, in the consequences of the discharge of his duties. We are therefore of opinion that the court did not err in its direction to the jury.

The judgment must be affirmed, with costs.