BALTIMORE AND OHIO SOUTHWESTERN RAILROAD COMPANY v. BURTCH.

[No. 23,536. Filed March 14, 1922. Rehearing denied June 8, 1922.]

1. PLEADING.— Complaint.— Sufficiency.— Motion to Make More Specific.—Where it is apparent from the nature and character of the facts called for by a motion to make a complaint more specific that defendant was fully cognizant of all of them, or at least its opportunity for knowing them was superior to that of plaintiff, overruling the motion was not error, if the complaint was otherwise sufficient to fully and definitely advise defendant of the case it was required to meet. p. 203.

2. NEGLIGENCE.—Complaint.—Requisites.—A complaint for personal injuries grounded on negligence, to be good as against demurrer, must contain allegations showing the existence of a duty on the part of defendant to protect plaintiff from injury, a failure to perform that duty, and that the failure was the proximate cause of the injury. p. 204.

3. MASTER AND SERVANT.—Person Working at Servant's Request.—Duty of Master.—Generally, the master is not bound, nor is he under any duty, to those who perform services for him at the request of a servant engaged to do a given work other than not to wilfully injure such persons. p. 205.

4. MASTER AND SERVANT.—*Person Working at Servant's Request.—Duty of Master.*—Where a conductor in charge of a freight train, in the performance of his duty of unloading machinery, represented the railroad company and was not furnished sufficient man-power and appliances to do the work safely, he had authority to employ temporary assistants, and a person so employed was entitled to the same protection as the conductor, even though he might not have been entitled to wages, and the railroad company, in the exercise of ordinary care, was in duty bound to furnish such appliances and take such precautions as were reasonably necessary to avoid exposing such temporary assistant to unnecessary peril. p. 205.

5. MASTER AND SERVANT.—*Servant's Authority to Employ Temporary Assistants.—Evidence.—Custom.—Admissibility.*—In an action against a railroad company for injuries received by plaintiff, a bystander, while assisting in unloading heavy machinery from a freight car at the request of the conductor in charge of the train, evidence showing a custom of freight conductors to call upon bystanders for assistance when needed to unload heavy freight, *held* admissible to show authority of the conductor to request plaintiff to render assistance, as authority may result from the master's knowledge of a practice long continued by his servants in charge of his work. p. 208.

6. APPEAL.—*Review.—Harmless Error.—Failure to Strike Unresponsive Answer.*—In an action for injuries to a bystander called upon by a railroad conductor to assist in unloading heavy freight from a car, the refusal to strike out the answer of a witness to a question as to what extent the acts of carriers are governed by the written tariff rules filed with the Public Service Commission, that carriers were permitted to state definitely and clearly in tariffs, all rules and regulations to govern the relation between the patron and carrier, but they had been unable to state everything so clearly as to avoid interpretation, *held* not reversible error, though the answer in a measure lacked responsiveness. p. 210.

7. CUSTOMS AND USAGES.—*Evidence.—Admissibility.*—In an action against a railroad company for injuries to a bystander called upon by a train conductor to assist in unloading heavy freight from a car, where a witness was asked as to his knowledge of the practice of carriers in this state at the time of plaintiff's injury as to disposition of bulky shipments on their arrival at point of destination under a rule requiring owners to load and unload all freight carried at carload ratings and heavy or bulky freight carried under a designated rating which cannot be handled by the regular employes, or at stations where the carrier's loading or unloading facilities are not

sufficient for handling, did not invite an interpretation of such rule nor call for evidence tending to prove a custom or practice in contravention to it, and a responsive answer was properly admitted in evidence; the question having reference to the practice of carriers in the ordinary course of business when relying upon the rule as to the duty of unloading shipments covered thereby.   p. 211.

8.   CUSTOMS AND USAGES.—*Customs as Part of Law.*—*Proof.*— A custom or practice may be of such universal prevalence as ·to become a part of the existing law of which courts will take judicial notice, but where a custom or practice is circumscribed and limited in its application, it must be supported by proof, and, when well established, it is obligatory on the subject of its operation as a general law would be.   p. 211.

9.   APPEAL.—*Record.*—*Tender of Instructions before Argument.* —*Statute.*—Record *held* sufficient to show that the court, under §561 Burns 1914, Acts 1907 p. 652, providing a method for making instructions part of the record and of reserving exceptions to the rulings thereon, indicated, "before instructing the jury, by a memorandum in writing at the close" of the instructions, "the number of those given and refused," and that the requests were tendered in time.   p. 213.

10.   MASTER AND SERVANT.—*Injuries to Servant.*—*Instructions.*— *Emergency Justifying Servant in Employing Assistant.*—In an action against a railroad company for injuries to a bystander called upon by a train conductor to assist in unloading heavy freight from a car, defendant's requested instruction that an emergency arises from conditions compelling one "to act in a certain manner from which there is no escape or choice to the contrary," or that if the conductor had any other ways or means, or by moving the train to another place where the freight could have been unloaded, there was no emergency for unloading the freight in the manner attempted, *held* properly refused, in view of the allegations of the complaint. p. 216.

11.   COMMERCE. — *Interstate.* — *What Constitutes.* — *Statutes.*— Though an interstate shipment of freight within a rule making it the duty of the consignee to unload is in interstate transit from loading to unloading points, it ceases to be such when placed under the consignees control for unloading, and, in an action for injury to one called upon by a railroad conductor, in accordance with a prevailing custom, to assist in unloading a heavy machine coming within such rule, it was proper for the court to refuse an instruction that would have presented the case as one governed by §4 of the federal Employers' Liability Act (§8657 *et seq.* U. S. Comp. Stat. 1916, 35 Stat. at L. 65.)   p. 216.

From Jackson Circuit Court; *James A. Cox,* Judge.

Action by Guerney O. Burtch against the Baltimore and Ohio Southwestern Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

(For decision on appeal to the United States Supreme Court, see 263 U. S. 540; 69 L. Ed. ——; 44 Sup. Ct. 165. Reversed.)

*Morrison R. Waite, William A. Eggers, Kochenour & Prince* and *McMullen & McMullen,* for appellant.

*Montgomery & Montgomery* and *T. M. Honan,* for appellee.

MYERS, J.—This was an action by appellee against appellant to recover damages for personal injuries for which appellant was alleged to be responsible. The complaint was in two paragraphs. A general denial to each of those paragraphs formed the issue submitted to a jury for trial which resulted in a verdict and judgment in favor of appellee for $8,000. Appellant has assigned, and relies on alleged errors of the court, (1) in overruling its motion to make each paragraph of the complaint more specific; (2) in overruling its demurrer to each paragraph of the complaint for want of facts, and (3) in overruling its motion for a new trial.

The first paragraph of the complaint is based upon the Employers' Liability Act. Acts 1911 p. 145, §8020a *et seq.* Burns 1914. From this paragraph it appears that on October 24, 1917, appellant, an Indiana corporation employing more than five persons, was engaged in operating a steam railroad through the county of Jennings and other counties of this state. On the date stated it operated a freight train on its line of road with one Ed Jackson as conductor in charge thereof, which train, in one of its cars, carried a machine weighing about 2,000 pounds, and known as an ensilage cutter.

This machine was to be unloaded by Jackson, as such conductor, at the town of Commiskey, Jennings county, the place of its consignment, and where appellant maintained a depot and platform, a main track, a side track and a loading track. Jackson and his only assistants, three persons employed as brakemen on the train, by reason of the great weight of the machine, were unable to unload it safely. Thereupon, Jackson requested appellee to assist him. In obedience to this request, and not otherwise, appellee thereupon entered into the work and while he was thus engaged, and in the exercise of due care, one of the planks then in use in unloading the machine broke and the machine fell upon him, seriously and permanently injuring him. The negligence charged was: failing and omitting to provide and furnish men sufficient to unload the machine; failing to furnish safe and suitable appliances with which to perform the work; failing to unload the machine from the car to the platform; failing to place the car on the loading track and then unloading the machine on the ground to the east thereof; attempting to unload the machine from the car on the switch to the ground east of the loading track by the use of two green planks ten or twelve feet in length; and failing to inspect, test or support the planks so used.

The second paragraph proceeds upon the theory of an action at common law, and in substance alleges that appellee was a one-seventh owner of the machine and as such owner was present to receive the same, and who, upon the request of Jackson as conductor, undertook to assist in unloading it. The negligence charged is the same as that charged in the first paragraph.

We will first give attention to the motion to make each paragraph of the complaint more specific.

1.  It is apparent from the nature and character of the facts called for by the motion, that appellant

was fully cognizant to all of them, or at least its position for knowing them was superior to that of appellee. Hence, if the complaint was otherwise sufficient to fully and definitely advise appellant of the case it was required to meet, and we so hold, then the court's ruling in this regard was not erroneous. *Haskell, etc., Car Co.* v. *Trzop* (1920), 190 Ind. 35, 128 N. E. 401; *Haskell, etc., Car Co.* v. *Logermann, Admx.* (1919), 71 Ind. App. 69, 123 N. E. 818; *Thomas Madden, Son & Co.* v. *Wilcox* (1910), 174 Ind. 657, 91 N. E. 933; *Knickerbocker Ice Co.* v. *Gray* (1908), 171 Ind. 395, 84 N. E. 341; *Pittsburgh, etc., R. Co.* v. *Simons* (1907), 168 Ind. 333, 79 N. E. 911; *St. Louis, etc., R. Co.* v. *Brantley* (1910), 168 Ala. 579, 53 So. 305.

In considering the demurrer to the complaint it may be said that each paragraph thereof is grounded upon negligence. Hence, each paragraph, in order to

2. withstand the objections lodged against it, must exhibit facts showing the existence of a duty on the part of defendant to protect plaintiff from the injury of which he complains; a failure of defendant to perform that duty, and that such failure was the proximate cause of the injury. In respect to these essential elements to constitute negligence, appellant insists that neither of these paragraphs disclose a relation between it and appellee whereby it is charged with any duty to appellee other than not to wilfully injure him.

The first paragraph of the complaint proceeded upon the theory that Jackson, as conductor in charge of appellant's train and of its work of unloading the ensilage cutter, was authorized to employ assistants, in that, a necessity existed for assistance to do the work safely; that appellant, in the activities of unloading the machine, was represented by Jackson, at whose request appellee engaged in the work, thus entitling him to the same protection afforded other servants of appellant.

While the facts relied on by appellee in this paragraph as a basis for recovery, present, in form, a new question to this court, yet the decision thereof does not

3. require that we invoke a new principle. Generally speaking, it is true, the master is not bound nor is he under any duty to those who perform services for him at the request of a servant engaged to do a given work, other than not to wilfully injure such persons. Obviously this rule ordinarily must obtain, for if it were otherwise, the master might be involved in risk and responsibility imposed by the act of another without his authority or consent.

However this may be, the outstanding facts of this paragraph take this case without that rule and within the rule permitting a servant to bind his master

4. in case of some unforseen contingency or existing emergency. It may be conceded that Jackson had no general authority to employ or discharge assistants, but from all the facts and circumstances here shown, Jackson, in the performance of his duty of unloading the machine, represented appellant. It also appears that appellant failed to furnish him sufficient manpower and appliances reasonably necessary for him to accomplish the work safely. It may be argued with much force that an emergency employe is not in the employ of the master in a sense to create the relation of master and servant, but when it appears that by reason of some unforseen contingency or existing emergency reasonably requiring temporary assistance to do work safely, the servant in charge thereof as the representative of the master in that particular, may employ temporary assistants, as in this case, and his action in that regard will bind the master on the principle of implied authority so to do, and the person thus employed thereby, for the time, is entitled to the same protection as is the servant or agent upon whose request he ren-

dered the assistance, even though he may not be entitled to recover wages. *Aga* v. *Harbach* (1905), 127 Iowa 144, 102 N. W. 833, 109 Am. St. 377, 4 Ann. Cas. 441; *St. Louis, etc., R. Co.* v. *Bagwell* (1912), 33 Okla. 189, 124 Pac. 320, 40 L. R. A. (N. S.) 1180n; *Georgia Pacific R. Co.* v. *Propst* (1887), 83 Ala. 518, 525, 3 So. 764; *W. H. Neill Co.* v. *Rumpf* (1912), 148 Ky. 810, 147 S. W. 910, L. R. A. 1917C 1199; *Sloan* v. *Central Iowa R. Co.* (1883), 62 Iowa 728, 736, 16 N. W. 331; *Railroad* v. *Ginley* (1897), 100 Tenn. 472, 45 S. W. 348; *Street Railway Co.* v. *Bolton* (1885), 43 Ohio 234, 1 N. E. 333, 54 Am. Rep. 803.

The implied authority of a railroad conductor to employ a third person in case of a temporary existing emergency—a physician for an injured brakeman—has been considered and affirmed by this court. *Terre Haute, etc., R. Co.* v. *McMurray* (1885), 98 Ind. 358, 49 Am. Rep. 752; *Terre Haute, etc., R. Co.* v. *Brown* (1886), 107 Ind. 336, 8 N. E. 218; *Louisville, etc., R. Co.* v. *Smith* (1890), 121 Ind. 353, 22 N. E. 775, 6 L. R. A. 320. While the emergency in these cases was exceedingly potent, yet they recognize the principle supporting the cases above cited from other jurisdictions.

At the time appellee received his alleged injuries Jackson was in charge of the train and its crew. He was seeking to accomplish an end—the unloading of the machine—which was within the scope of his alleged employment. So it is said: "Where a servant is engaged in accomplishing an end which is within the scope of his employment, and while so engaged adopts means reasonably intended and directed to the end, which result in injury to another, the master is answerable for the consequences, regardless of the motives which induced the adoption of the means; and this, too, even though the means employed were outside of his authority, and against the express orders of the master." *Pittsburgh,*

*etc., R. Co.* v. *Kirk* (1885), 102 Ind. 399, 402, 1 N. E. 849, 52 Am. Rep. 675.

When appellee accepted Jackson's request and entered upon the work he had the right to expect that Jackson, as the representative of appellant, would use ordinary care for his safety, and certainly so, in so far as he might be affected by the use of appliances furnished. The fact that there may have been other and more safe ways and means of handling the machine will not shield appellant from the negligence here charged, for it was appellant, through Jackson, and not appellee, who chose the place, adopted the appliances, and the manner of doing the work.

The second paragraph, among other facts, states that appellant was to unload the machine from its car at the town of Commiskey and that appellee as part owner thereof was there to receive it. He assisted in unloading the machine at the request of Jackson, who, as appellant's representative, was in charge of that work. He was injured while thus engaged, through the alleged negligence of Jackson. Such being the status of the parties it is clear that appellee, at the time he received the injury of which he complains, was neither a mere volunteer, a trespasser, nor a mere licensee. *Hill* v. *Chicago, etc., R. Co.* (1919), 188 Ind. 130, 122 N. E. 321; *Empire Machinery Co.* v. *Brady* (1896), 164 Ill. 58, 45 N. E. 486; *Id.*, 60 Ill. App. 379. Hence, the doctrine of *respondeat superior* applies. In the case of *Welch* v. *Maine, etc., R. Co.* (1894), 86 Me. 552, 565, 30 Atl. 116, 117, 25 L. R. A. 658, it is said: "But where one has an interest in the work, either as consignee or the servant of a consignee, or in any other capacity, and, at the request or with the consent of another's servants, undertakes to assist them, he does not do so at his own risk, and, if injured by their carelessness, their master is responsible." *Meyer* v. *Kenyon-Rosing Machinery*

Co. (1905), 95 Minn. 329, 104 N. W. 132; *Kelly* v. *Tyra* (1908), 103 Minn. 176, 114 N. W. 750, 115 N. W. 636, 17 L. R. A. (N. S.) 334; *Empire, etc., Co.* v. *Brady, supra; Railroad* v. *Ward* (1897), 98 Tenn. 123, 38 S. W. 727, 60 Am. St. 848; *Railroad* v. *Ginley, supra; Weatherford, etc., R. Co.* v. *Duncan* (1895), 88 Tex. 611, 32 S. W. 878; *Eason* v. *S. & E. T. R. Co.* (1886), 65 Tex. 577, 57 Am. Rep. 606; *Street Railway Co.* v. *Bolton, supra; Jackson* v. *Southern Railway* (1906), 73 S. C. 557, 54 S. E. 231.

Appellant, in the exercise of ordinary care, under all of the circumstances here shown, was in duty bound only, as an ordinarily prudent person, to furnish such appliances and take such precautions reasonably necessary to avoid exposing appellee to unnecessary peril. The pleaded facts show that appellant failed to perform its duty in the particulars mentioned, and the demurrer was properly overruled.

Appellant, in support of its motion for a new trial, insists that the trial court erred in permitting appellee's witnesses, Hartwell, Green, Lurton, and

5.   Gothlin, to answer certain questions put to them on direct examination. Looking at appellant's brief it appears that at the time, and for about eight years prior to the time appellee was injured, Hartwell was the telegraph operator at the town of Commiskey and his post of duty was at appellant's depot. This witness testified to the arrival of appellant's freight train, carrying the ensilage cutter weighing about 1,700 pounds, with Jackson, as conductor in charge of the train. The train was placed upon the side track where appellant's employes began to unload freight, a part of which was the ensilage cutter. Six or eight persons, one of whom was appellee who had a short time before made inquiry about the arrival of the machine, were standing upon the platform. To these persons Jackson

Baltimore, etc., R. Co. *v.* Burtch—192 Ind. 199.

made a general request for assistance in unloading the cutter, and that some one get heavy timbers for that purpose. Witness assisted in getting the cutter to the door of the car but left before the timbers came and did not see them until after the accident. In answer to one of appellee's questions witness testified that he had frequently heard the conductors ask bystanders for assistance when needed to unload heavy freight, but did not know how long this practice had prevailed.

Green was appellant's station agent at the town of Commiskey at the time of the accident, and had been for about two years prior to that day, and in answer to a question by appellee, said that "it has frequently been the practice that conductors would ask bystanders to help unload heavy freight."

The ensilage cutter was consigned to Lurton, a merchant who resided in the town of Commiskey. For fifteen years prior to 1913, Lurton was the agent of appellant at Commiskey, and in answer to a question, testified that "it is a very common occurrence for a train crew to ask someone to help with heavy freight."

Appellant objected to each of the questions calling for the practice of conductors requesting bystanders to help unload heavy freight, as they were propounded to the witnesses, for the reason that they did not tend to prove a fact within the issues and that any such practice would be contrary to law. Motions were made to strike out each of the answers for practically the same reasons urged in support of the objections to the questions.

True, appellee's complaint is silent as to the custom and practice of conductors calling on bystanders to assist in unloading heavy freight. It is also true, as we have said, that the first paragraph of his complaint proceeded upon the theory of an emergency existing for additional help to unload the machine, and recovery was

sought upon the ground of the conductor's authority to employ assistants in such cases. Thus it will be seen that authority, either express or implied, in Jackson, to make the alleged request acted upon by appellee, was an essential element of his cause of action. The object of the questions, so challenged, was to furnish evidence tending to show appellant's knowledge of the practice of its conductors calling on bystanders to assist in unloading heavy freight at the town of Commiskey. For consent or authority may result from the master's knowledge of a practice long continued by his servants in charge of his work. Authority, as we have said, to bind the master, as here considered, may be either express or implied, and evidence tending to prove either was admissable under the issues of this case. The admitted testimony now in question was properly allowed to go to the jury as tending to show that Jackson had implied authority to make the request to which appellee responded. In *Haluptzok* v. *Great Northern R. Co.* (1893), 55 Minn. 446, 450, 57 N. W. 144, 146 (26 L. R. A. 739), it is said: "Such authority may be implied from the nature of the work to be performed, and also from the general course of conducting the business of the master by the servant for so long a time that knowledge and consent on part of the master may be inferred. It is not necessary that a formal or express employment on behalf of the master should exist, or that compensation should be paid by or expected from him. It is enough to render the master liable if the person causing the injury was in fact rendering service for him by his consent, express or implied."

Witness Gothlin, after stating that since July, 1917, he had been chief of the tariff bureau of the Public Service Commission of Indiana; member of the 6. Ohio Railroad Commission from October 1, 1906, to July 1, 1911; member of the Public Service

Commission of Ohio from July 1, 1911, to October 24, 1913; and then, superintendent of tariffs of Ohio until February, 1914, and prior to October, 1906, he had held various positions with various railroads, was asked to what extent, complete or otherwise, the acts of carriers are governed by the written tariff rules filed with the commission, in effect answered that carriers were "permitted to state definitely and clearly in tariffs, all rules and regulations to govern the relation between the patron and carrier;" but so far, they had been unable to state, in rules, everything so clearly as to avoid interpretation. Appellant's motion to strike out this answer, for the reason that it was not responsive to the question and called for an interpretation of the law which was for the court, was overruled. While this answer was quite general and in a measure lacked responsiveness, yet it was not harmful to appellant and the court's ruling on the motion cannot be regarded as reversible error.

Later, this same witness was asked as to his experience and knowledge of the practice of carriers in Indiana in October, 1917, as to disposition of cars or bulky shipments on their arrival at the point of destination under Rule 8-B. The objections to this question, in substance, were, that it called for evidence tending to prove custom and practice among carriers which was not pertinent to any issue; that it was general and not directed to any acts of defendant, and that any practice changing the terms of the rule would be in violation of law. The attention of the witness had been called to Rule 8-B in a former question. That rule provided: "Section 1—Owners are required to load and unload all freight carried at carload ratings. Section 2 —Owners are required to load and unload heavy or bulky freight carried at L. C. L. ratings that cannot be handled by the regular employees, or at stations where

the carrier's loading or unloading facilities are not sufficient for handling."

The obvious purpose of the question under consideration was to show custom, practice or usage by railroads generally in this state as to their disposition of cars or bulky shipments of freight at point of destination. It pertained to the methods in use by such carriers, at such point prior to a release of such freight to the consignee. These were facts aside from Rule 8-B, and, for aught appearing, facts not covered by any rule. It referred to the practice of such carriers in the ordinary course of their business when relying upon the terms of the rule as to the duty of unloading such shipments. True, the question referred to Rule 8-B, but in that respect it merely identified the character of freight covered by the inquiry. A custom or practice may be of such universal prevalence as to become a part of the existing law and of which courts will take judicial notice, but where a custom or practice is circumscribed and limited in its application, it must be supported by proof, and, when well established, it is as obligatory on the objects of its operation as would be a general law. With this view of the question, it did not invite the witness to interpret or give the rule any particular construction, nor call for evidence tending to prove a custom or practice in contravention of it.

In this case the complaint shows, and it is supported by uncontradicted evidence, that appellant, at the town of Commiskey, maintained a platform and at least three tracks, each of which had a designated purpose. Charges of negligence are based upon appellant's omission to use certain of these tracks for unloading the machine. From the undisputed evidence it appears that the platform was ten or twelve inches high composed of brick and extended from the station a short distance along the main track; that the ensilage cutter was consigned to

a merchant having a store room and regularly engaged in business at that town, and who had sold the cutter to a group of persons, one of whom was appellee; that the train, of which the car carrying the cutter was a part, was placed upon the side track and the conductor who had charge of the train, without any notice to the consignee of the cutter, or placing the car containing the cutter in a position for the consignee to unload, and while the car was a part of the train, undertook to unload it by calling on bystanders, among whom was appellee, to aid the three brakemen in this work.

Now, if it be admitted that it was the duty of the owner of the machine, in this case the consignee, to unload it, it was proper for appellee to show any custom or practice at destination points universally followed by carriers in handling freight covered by the rule.

The witness in this case was shown to be qualified to answer the question. The question, under the circumstances of this case, was a proper one and a responsive answer was properly allowed to go to the jury.

Appellant further insists that the court erred in refusing to give five of its requested instructions and in giving six of the instructions requested by appellee.

9. Appellee makes the points: (1) That the record does not show that appellant tendered its requested instructions prior to the beginning of the argument to the jury; (2) That the record affirmatively shows that the trial court did not indicate by written memorandum at the close of the instructions requested by each of the parties, the numbers of those given and of those refused, and sign the same before argument.

The record on this subject shows, that on May 27, 1918, the trial of this cause began, and on the following day the evidence was concluded, the jury instructed, and a verdict returned. On this last date, appellant in writing requested that the court give its instructions to the

jury in writing, and that it indicate before argument the instructions to be given, to the end that the same may be used by counsel in argument to the jury, but with this request no instructions were tendered. An order-book entry states that at the close of the instructions to the jury, all instructions requested and all instructions given by the court of its own motion, together with the exceptions of appellant in relation thereto endorsed thereon, were, by the judge of the court, filed with the clerk, which instructions, endorsements and notations are shown in the same entry in the order following: Two instructions given by the court on its own motion; all the instructions requested by appellee and obviously tendered before argument to the jury; all those requested by appellant; followed by six instructions given by the court on its own motion. The instructions given by the court on its own motion were numbered consecutively and signed by the judge. On the right hand margin and opposite each instruction of each series requested is the word "given" or "refused." At the close of each of the requested series of instructions numbered consecutively, there is a memorandum dated May 28, 1918, signed by appellant's attorneys and also by the trial judge, stating that appellant at the time excepted to the giving of certain instructions severally, tendered by appellee, specifying the same by numbers, and that it excepted to the court's refusal to give each of certain of its requested instructions, designating them by numbers, and also as a part of each memorandum the numbers of the instructions requested and given are indicated by number. At the conclusion of all the instructions is the signature of the trial judge.

The facts thus disclosed by the transcript, although indicating lack of care in the preparation of the original entries, must be regarded as sufficient to show a substantial compliance with an act concerning civil pro-

cedure approved March 12, 1907. Acts 1907 p. 652, §1, §561 Burns 1914. This act affords a method for making instructions a part of the record and of saving exceptions thereto. According to the provisions of this section of our Code, when either party desires the court to instruct the jury in writing, a request therefor must be made before the commencement of the argument to the jury. In this case, appellant made the request and a fair interpretation of the transcript indicates that such request was timely made.

As to the requested instructions, it sufficiently appears that the court indicated *"before instructing the jury,* by a memorandum in writing at the close" of these instructions "the numbers of those given and of those refused," (Our italics) which memorandum was signed by the judge. It affirmatively appears that the court, as requested, gave all of the instructions tendered by appellee and seven of the fourteen instructions tendered by appellant. From this action it would seem that all instructions were tendered in time, thereby distinguishing the case at bar from the cases cited by appellee, namely: *Fox* v. *Barekman* (1912), 178 Ind. 572, 99 N. E. 989; *Stamets* v. *Michenor* (1905), 165 Ind. 672, 75 N. E. 579, and *Supreme Tent, etc.* v. *Ethbridge* (1909), 43 Ind. App. 475, 87 N. E. 1049. The record under consideration does not sustain appellee's contentions.

Appellee also insists, that appellant's original brief does not set out that part of its motion for a new trial claiming error of the court in giving any of appellee's instructions or in refusing any of appellant's requested instructions. Since the filing of appellee's brief appellant obtained leave from this court to file a corrected brief in the particulars mentioned, and so filed the same. Appellee has not answered the amended brief, consequently we have no suggestions from him on the merits of the questioned instructions.

Instructions Nos. 3 and 5 requested by appellant and refused, in effect, told the jury that an emergency arises from conditions compelling one "to act in a certain manner from which there is no escape or choice to the contrary," or that if Jackson had any other ways or means, or by moving his train to another place where the cutter could have been unloaded, there was no emergency for unloading in the manner attempted. Under the allegations of the complaint, Jackson represented appellant in selecting the place and in undertaking to remove the cutter from the car. It was the circumstances and conditions thus created and there controlled by appellant, together with its assumption of the work its employes then and there present were unable to perform without calling assistance, that formed the basis for the charge of an existing emergency. Hence, a general instruction (No. 3), or one (No. 5) limited to the first paragraph of the complaint, requiring appellee to exclude, by a fair preponderance of the evidence, every possible manner by which appellant's employes at hand might have possibly unloaded the machine safely, was too narrow and therefore rightfully refused.

Instruction No. 7, if given, would have presented the case to the jury as one governed by §4 of the federal Employers' Liability Act. (§8657 *et seq.* U. S. Comp. Stat. 1916, 35 Stat. at L. 65.) If it be conceded that appellant, while carrying the cutter, was engaged in the business of interstate commerce, it does not follow necessarily that one who is called specially to assist in unloading it at the point of its destination, is, while thus at work, engaged in interstate commerce. In *Pierson* v. *New York, etc., R. Co.* (1912), 83 N. J. Law 661, 664, 85 Atl. 233, 235, the court in speaking of §1 of the federal Employers' Liability Act, §8657 *et seq.* U. S. Comp. Stat. 1916, *supra,* said: "By

it liability is imposed upon a common carrier by railroad, in case it is engaged in the business of interstate commerce, but only *while engaging* in such business at the time of the happening of an accident which produces injury to an employe. And it does not impose such liability even when the carrier is so engaged, unless the person injured is at the time of the occurrence of the accident himself employed by the carrier in such commerce. In other words, the purpose of the statute is 'to secure the safety of interstate transportation and of those who are employed therein.' *Mondou* v. *New York, New Haven and Hartford Railroad Co.*, 223 U. S. 1, 51." See also, *Shanks* v. *Delaware, etc., R. Co.* (1916), 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C 797; *Pedersen* v. *Delaware, etc., R. Co.* (1913), 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C 153; *Illinois Central R. Co.* v. *Behrens* (1914), 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C 163; *Gray* v. *Chicago, etc., R. Co.* (1913), 153 Wis. 637, 142 N. W. 505; *Barker* v. *Kansas City, etc., R. Co.* (1913), 88 Kans. 767, 129 Pac. 1151, 43 L. R. A. (N. S.) 1121. Moreover, the word "employed," as used in the federal act and found in the phrase "while employed by such carrier," has been construed to mean persons working for the carrier "at its request and under an agreement on its part to compensate them for their services." *Missouri, etc., R. Co.* v. *West* (1913), 38 Okla. 581, 134 Pac. 655. Furthermore, courts have announced test questions for determining when a personal injury to an employe of a railroad company is within the federal act. The test given in *Lamphere* v. *Oregon R., etc., Co.* (1912), 196 Fed. 336, 116 C. C. A. 156, 47 L. R. A. (N. S.) 1, is: "What is its effect upon interstate commerce? Does it have the effect to hinder, delay, or interfere with such commerce?" This test was followed in *Shanks* v. *Delaware, etc., R. Co.* (1914), 163

App. Div. 565, 148 N. Y. Supp. 1054, affirmed, 214 N. Y. 413, 108 N. E. 644, Ann. Cas. 1916E 467, and on appeal to the federal Supreme Court, *supra*, p. 558, it is said: "The true test of employment in such commerce in the sense intended is, was the employe at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it."

In the case at hand the cutter had arrived at its destination, and, under Rule 8-B, it was the duty of the consignee to unload it. The duty as fixed by this rule was equally obligatory on both appellant and the consignee of the shipment. As between them, as claimed by appellant, it was a law for their guidance. In connection with this rule we are confronted with evidence undisputed that it was the universal custom of railroads to place the car containing a shipment, as in this case, at some convenient point for the consignee to unload and to notify him. Thus it may be said that an interstate shipment within Rule 8-B, is in interstate transit from loading to unloading points, and ceases to be such only when placed under consignee's control for unloading. When this is done, a railroad carrier has completed its last stage of service, and, as to such shipment, it is no longer engaged in interstate transportation. Hence, any act by such carrier thereafter with reference to the unloading of such shipment, or by any of its employes or others called by it to assist in such act, would not be a furtherance of or an engaging in interstate transportation within the meaning of the federal act. Appellant, by its representative—the conductor—decided to and did actually enter upon the work of unloading the cutter while the car containing it was a part of the train standing on the side track, and work which, under the evidence, all must agree was that of another, had appellant performed its final act of transportation

by placing the car in the hands of the consignee. This it did not do. Consequently appellant, in defending the instant action found itself compelled to admit either that it was its duty to unload the cutter and that Rule 8-B did not apply, or that Rule 8-B did apply and that by engaging in the work it not only violated the rule claimed by it to have the force of a general law, but a proven universal custom as well. It chose the latter position thereby interposing its own wrong in opposition to a chosen remedy which, but for such wrong, would be a proper one as the basis of an action instituted not by the consignee, but by one who was induced to answer appellant's call for assistance in performing a work in violation of a rule it is now offering as a shield against responsibility for its negligence claimed to be the proximate cause of appellee's injury. Appellant's position in this respect ought not and cannot be approved. There was no error in refusing the instruction.

The court was also right in refusing instructions Nos. 8 and 11, as they were pertinent only in a case within the federal act.

Appellee requested seven instructions, all of which were given. Of these instructions, appellant claims that six were erroneous. It objects to the first two for the reason that neither refers to the facilities of defendant for unloading the machine; that the jury was allowed to determine, unaided, the question of an emergency; that each was misleading and ignored the idea of an assumption of risk. Instruction No. 1 referred to the finding of certain facts which might have been influential with the jury in determining an existing emergency, without any admonishment with reference to its consideration of the instrumentalities furnished by appellant to its employes for unloading the machine. While the instruction may be subject to criticism for its fail-

ure in that respect, yet upon an examination of the pleadings and evidence, we are convinced that the omission mentioned did not mislead the jury nor was it harmful to appellant.

The assumption of risk objection applies more properly to instruction No. 2 and is the sole objection to instruction No. 3, and failure to tell the jury that it might consider contributory negligence of appellee in mitigation of his damages is urged against instruction No. 6. As the first paragraph of complaint rests upon our local Employers' Liability statute, *supra*, a charge, under the circumstances here shown, that appellee assumed the risk or that the jury might consider acts of contributory negligence of appellee in diminution of his damages, would have been error. Hence, appellant's objections to these instructions were not well taken.

Instruction No. 4 was on the subject of the master's duty to furnish his employes with reasonably safe and suitable tools and appliances and to make proper inspection of the same. The sole objection urged against this instruction is, that it requires the master to "inspect *all* tools, whether intricate or simple." We are satisfied the jury understood from this charge that the master was only required to use the care of an ordinarily prudent and careful person under all the circumstances to keep his tools and appliances in a safe condition for the use of his employes in performing their duties. It was not error to give this instruction.

Instruction No. 5 is limited to the second paragraph of the complaint and is in accord with our ruling as to the sufficiency of that paragraph. It told the jury, in substance, that if plaintiff had an interest in the cutter and by reason thereof was on defendant's right of way with its knowledge and consent, then he would not be a trespasser and defendant would be bound to exercise ordinary care for his safety, and would be liable for any

injury sustained by plaintiff proximately caused by its negligence and to which plaintiff's negligence did not contribute. This instruction in no way involved the subject of master and servant or the rule applicable to fellow servants. It rests upon a mutual interest of the parties in the thing to be done, or business relation between them by reason of which, as in this case, appellee was rightfully on appellant's premises. The question here does not involve the distinction between services rendered to another in an employment, and one which, though helpful to another, is performed alone for the purpose of promoting one's own interest, which was the turning point in *Huntzicker* v. *Ill. Cent. R. Co.* (1904), 129 Fed. 548, 64 C. C. A. 78, cited by appellant.

Finally, it is insisted that the verdict is not sustained by sufficient evidence. Appellant in support of this contention insists that under the evidence this was a case within the federal act, and therefore the verdict was contrary to law. The evidence is undisputed. We have carefully considered it and concluded that what we have said, in ruling on other points presenting this same question, is more or less applicable to the points made in support of this assignment. Without further extending this opinion, we hold that appellant's insistence on the evidence must be denied.

Judgment affirmed.

It having been suggested that appellee died between the time of submission of this cause and the affirmance of the judgment, it is now therefore ordered that the mandate "Judgment affirmed" heretofore entered be modified to read—Judgment affirmed as of the date of submission.

June 8, 1922.